# VINCENT S. LUKAS v. BAR ASSOCIATION OF MONTGOMERY COUNTY, MARYLAND, INC.

[No. 820, September Term, 1976.]

*Decided April 6, 1977.*

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

*Peter Parker* and *Gordon W. Priest, Jr.*, for appellant.

*James A. Sullivan,* with whom was *Thomas F. Hogan* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Vincent S. Lukas (Lukas), a self-styled, self-employed "Personnel, Business Consultant," was enjoined by the Circuit Court for Montgomery County, on complaint by the Bar Association of Montgomery County, Maryland, Inc., from the unauthorized practice of law.[1]

Lukas complains in this Court that Md. Ann. Code art. 10, §§ 26A (action for an injunction), 32 (prohibiting practice for compensation unless admitted to the bar), and 33 (falsely representing self as an attorney) are "so ill-defined by Maryland legislative and judicial authority that prohibition thereof is violative of due process."

As interesting as that question may be, we are precluded from deciding it because it was not raised in the trial court and, hence, is not properly before us. Md. Rule 1085, *Kerpelman v. Bricker*, 23 Md. App. 628, 329 A. 2d 423 (1974); *Washington Homes, Inc. v. Baggett*, 23 Md. App. 167, 326 A. 2d 206 (1974). Even questions of constitutional law must be first raised and decided in the trial court. *Hall v. State*, 22 Md. App. 240, 323 A. 2d 435 (1974); *Palmer v. State*, 19 Md. App. 678, 313 A. 2d 698 (1974); *Smith v. State*, 16 Md. App. 317, 295 A. 2d 802 (1972); *Woodell v. State*, 2 Md. App. 433, 234 A. 2d 890 (1967). We do not consider the issue.

Stripped of the constitutional challenge, Lukas argues that the evidence was ". . . insufficient to support a conclusion that . . . [he] was engaged in the unauthorized practice of law under any reasonable definition thereof."

We shall not endeavor to formulate a precise definition of the practice of law [2] because such a definition may, in the words of Justice Stern in *Shortz v. Farrell*, 327 Pa. 81, 84, 193 A. 20, 21 (1937), ". . . be more likely to invite criticism

---

1. Md. Ann. Code art. 10, § 26A (b) authorizes a bar association or bar counsel to initiate a complaint for an injunction against a person who engages in the unauthorized practice of law.

2. Lord Evershed, in *Practical and Academic Characteristics of English Law* 40 (1956), quotes Lord Greene as saying that the role of a lawyer is "[t]o protect his clients from being persuaded by persons whom they do not know to enter into contracts which they do not understand to purchase goods which they do not want with money which they have not got."

than to achieve clarity." We do know, as Justice Stern wrote in *Shortz*, that:

> "[W]hen a lawyer has, through patient years of study, acquired an understanding of the law and obtained a license to engage in its practice, he applies his knowledge in three principal domains of professional activity:
>
> 1. He instructs and advises clients in regard to the law, so that they may properly pursue their affairs and be informed as to their rights and obligations.
>
> 2. He prepares for clients documents requiring familiarity with legal principles beyond the ken of the ordinary layman — for example, wills, and such contracts as are not of a routine nature.
>
> 3. He appears for clients before public tribunals to whom is committed the function of determining rights of life, liberty, and property according to the law of the land, in order that he may assist the deciding official in the proper interpretation and enforcement of the law.
>
> Since, in order to determine such rights, it is necessary first to establish the pertinent facts, which are frequently uncertain, controverted, and best ascertainable, as experience has demonstrated, by the application of rules of evidence tested by centuries of usage, a lawyer, being technically fitted for the purpose, examines and cross-examines witnesses, and presents arguments to jurymen to guide them to a proper determination of the facts. As ancillary to participation in trials and in legal argumentation, he prepares pleadings and other documents incidental to the proceedings.
>
> In considering the scope of the practice of law mere nomenclature is unimportant, as, for example, whether or not the tribunal is called a 'court,' or the controversy 'litigation.' Where the application of legal knowledge and technique is

required, the activity constitutes such practice even if conducted before a so-called administrative board or commission. It is the character of the act, and not the place where it is performed, which is the decisive factor." *Id.* at 84-85, 193 A. at 21 (footnote omitted).

The evidence upon which the chancellor based his findings in the instant case shows:

I. Lukas represented Montgomery County employees in their dealings with the Personnel Board. His activities included interpretation of personnel rules and regulations (Montgomery County Code ch. 33), preparing memoranda of law for the benefit of the Personnel Board, reviewing his clients' personnel records after having obtained the requisite power of attorney, and conducting informal discussions which members of the Personnel Board in hopes of resolving his clients' problems. It is clear that Lukas never appeared at a formal hearing before the Personnel Board.

Lukas received compensation for his services. In one case, he was paid $2,900; in another $1,065.

II. On November 15, 1974, Lukas wrote to Daniel T. Doherty, Esq., the then Chairman of the Workmen's Compensation Commission, in which he advised Chairman Doherty that he, Lukas, wanted a hearing for one Donald C. Matlock and stated, "I will argue his case concerning his Class Specification Building Service Worker I to show that there was negligence with his superiors which caused him having a heart attack. . . ." In the same letter, he stated, "In my request for a Workmen's Compensation hearing for the earliest date available. I will prove negligence, malice, and discrimination against the employee who got injured which was caused by his employer." Fortunately for all concerned, Chairman Doherty advised Lukas that under the law of Maryland Lukas could not represent Matlock before the Commission.

III. Lukas drew an agreement amongst a Mr. Wood, a Mr. Thatcher, and a Mr. Bell. The many covenants of the agreement are not germane to this opinion except to note

that the agreement commits Dream World, Inc., to a number of things, but Dream World is not a party thereto.

Lukas also drafted a "working agreement" between Thatcher and Bell.[3] For this "service," Lukas submitted the following bill on lined 3-3/4 inch by 6-3/4 inch loose leaf paper:

> "$ 50.00  Lease Meeting
>           26th July, Weaver Bros.
> $100.00  Working agreement
> $ 25.00  Typist
> $ 43.50  Material & car expense's
> $218.50
>   23.40  Telephone calls
> $241.90
>           Dream World Inc."

Although Thatcher testified that Lukas represented both Thatcher and Bell, Thatcher paid the bill.

Lukas acknowledged that he had drafted ten to twelve other agreements and "made a form" of a will that Mr. Matlock completed at a fee of $35. The latter occurred when Mr. Matlock was ". . . going to have his heart taken out. . . . Not open heart surgery. He had his heart taken out."

Significantly, Lukas said that he drew "[a]greements, not contracts. An agreement and a contract is two different things." Shortly after that comment, he stated, "I don't know what law book you read, but a contract is something that somebody is forced to do." He illustrated by saying, "A contract is like if I get into a bank and borrow, and I am forced to honor that contract I signed." Lukas defined an agreement as being ". . . between two parties, that they agree to do something between each other and they are going to work together."

The chancellor had no difficulty in determining that Lukas was, in fact, engaged in the unauthorized practice of

---

3. There is an indication in the record that subsequent litigation arose between Bell and Thatcher over the "agreement" and its meaning.

law irrespective of how Lukas chose to characterize his activity. The court then enjoined Lukas from "soliciting, accepting, advising, or attempting to advise any person, firm or corporation, or interpret or attempt to interpret the provisions of any rule, regulation, statute or constitution. Further, he shall not prepare or attempt to prepare any legal document, such as a contract, agreement, pleading, brief, legal opinion or a like legal document on behalf of any other person, firm or corporation."

The Court of Appeals, in *Public Service Commission v. Hahn Transportation, Inc.*, 253 Md. 571, 253 A. 2d 845 (1969), a case characterized by Lukas as ". . . a decision that must be a monument to loose statutory construction," said that what constitutes the practice of law is for the courts to determine. *See also People ex rel. Chicago Bar Association v. Goodman*, 366 Ill. 346, 8 N.E.2d 941 (1937); *West Virginia State Bar v. Earley*, 144 W. Va. 504, 109 S.E.2d 420 (1959); ABA Comm. on Professional Ethics, *Opinions*, No. 198 (1939).

Although the General Assembly can and has provided for criminal sanctions for the unauthorized practice of law, Md. Ann. Code art. 10, §§ 32-33, such legislation is merely in aid of and not a substitution for the right of the courts to regulate the practice of law. The power to regulate and define what constitutes the practice of law is vested solely in the judicial branch of government and not the executive nor the legislative. *People ex rel. Chicago Bar Association v. Goodman, supra.*

We think Lukas's actions before the Personnel Board and the Workmen's Compensation Commission fall within the ambit of the rule enunciated in *Public Service Commission v. Hahn Transportation, Inc., supra* at 580-81, 253 A. 2d at 850, where the Court declared:

> "We have no doubt that when an individual on behalf of his employer or another prepares and files pleadings in a contested case before the Com- mission and appears at and engages in its trial by the examination or cross-examination of wit- nesses, in light of the law he had determined to be

> applicable or controlling and by arguing the case in writing or orally he engages in the practice of law."

The case law makes clear, however, that a licensed attorney is not necessary for the mere filling out of forms supplied by a Workmen's Compensation Commission. *Goodman v. Beall*, 130 Ohio St. 427, 200 N. E. 470 (1936); *Shortz v. Farrell, supra.* While appellant's activities *in re* the Workmen's Compensation Commission amounted to a nullity because of former Chairman Doherty's response, Lukas's dealings with the Personnel Board, while not amounting to the filing of pleadings in the trial of a contested case, were something more than the mere mechanical filling out of forms. In this regard, the general rule is:

> "Where trial work is not involved but the preparation of legal documents, their inter-pretation, the giving of legal advice, or the ap-plication of legal principles to problems of any complexity, is involved, these activities are still the practice of law. On the other hand, where pure engineering, accounting or clerical work is involved, the practice of law is not present, and in these latter areas the layman can adequately perform."
> V.om Baur, *Administrative Agencies and Un-authorized Practice of Law*, 48 A.B.A.J. 715, 716 (1962).

*People ex rel. Chicago Bar Association v. Goodman, supra. See generally West Virginia State Bar v. Earley, supra.*

It is well settled that Lukas's preparation of the two "agreements" constituted the unauthorized practice of law. We think the rule relative thereto is well stated in Annot., 111 A.L.R. 19, 24-25 (1937) that:

> "[T]he practice of drawing for others . . . written instruments which require more than the most elementary knowledge of the law, or more than that which the ordinary or average laymen may be deemed to possess, may well be deemed to

constitute the practice of law, since special legal knowledge and skill are required.

*See also In re Matthews*, 58 Idaho 772, 79 P. 2d 535 (1938); *People v. Title Guaranty & Trust Co.*, 180 App. Div. 648, 168 N.Y.S. 278 (1917); *State ex rel. Seawell v. Carolina Motor Club, Inc.*, 209 N. C. 624, 184 S. E. 540 (1936); *Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934); *Blair v. Motor Carriers Service Bureau*, 40 Pa. D.& C. 413 (1939).

The chancellor's finding of fact that Lukas was engaged in the unauthorized practice of law is amply supported by the evidence. His application of the law with respect to that finding is generally correct, and but for the overly broad sweep of the injunction we would have no hesitency in affirming. The injunction, however, is too broad in that it enjoins Lukas from doing those things which he is legally entitled to do, such as the filling out of forms supplied by the Workmen's Compensation Commission or other purely mechanical type functions. Moreover, the injunction, read literally, forbids Lukas to ". . . interpret or attempt to interpret the provisions of any rule, regulation, statute or constitution . . ." for himself. Not only is such a prohibition unconstitutional, but it is utterly impossible to enforce.

In the light of the broad phraseology of the injunction, we shall remand the matter to the circuit court without affirming. The injunction, however, is too broad in that it injunction may be issued.

> *Case remanded without affirmance or reversal for further proceedings consistent herewith.*
>
> *Costs to be paid one-half by appellant and one-half by appellee.*