Benoit O. BROOKENS, Appellant,

v.

COMMITTEE ON UNAUTHORIZED
PRACTICE OF LAW, Appellee.

COMMITTEE ON UNAUTHORIZED
PRACTICE OF LAW,
Cross–Appellant,

v.

Benoit O. BROOKENS, Cross–Appellee.

Nos. 86–1181, 86–1182.

District of Columbia Court of Appeals.

Argued July 10, 1987.
Decided March 4, 1988.

Benoit O. Brookens, pro se.

James P. Schaller, with whom Jay A. Resnick, Washington, D.C., was on the brief, for the Committee on Unauthorized Practice of Law.

Before PRYOR, Chief Judge, MACK, Associate Judge, and REILLY, Senior Judge.

PRYOR, Chief Judge:

Benoit O. Brookens and this court's Committee on Unauthorized Practice each seek review, through cross-appeals, of an order by a single judge of this court in which, pursuant to D.C.App.R. 49,[1] Brookens was held in contempt for unauthorized practice of law in the District of Columbia and enjoined from engaging in similar behavior in the future.

## I. *Facts*

At all times relevant to the events at issue here, Benoit O. Brookens was a member of the bars of Wisconsin and Pennsylvania. He has never been a member of the District of Columbia Bar. Since at least 1979, Brookens has maintained offices in the District of Columbia and has appeared on behalf of others or on behalf of himself and others jointly in numerous cases in the Superior Court of the District of Columbia, United States District Court for the District of Columbia, and the District of Columbia Court of Appeals, including *Shannon & Luchs Co. v. Elie,* Superior Court L & T No. 92786–81; *Vogt v. Gray,* Superior Court C.A. No. 12037–81; *Escrow Committee v. Hagner Management Corp.,* Superior Court C.A. No. 7561–81; *Greene v. Greene,* Superior Court C.A. No. 7153–82; *Brenneman v. District of Columbia,* No. C.A. 81–79 (United States District Court for the District of Columbia). In addition, in three cases before this court, he filed an opposition motion on behalf of "intervenors" (No. 82–1604) and a "notice of intention to intervene" (Nos. 82–1608 and 82–1609), and in these cases provided the only signature on the filed documents. He also testified in another case, *Hagner Management Corp. v. Brookens,* Superior Court L & T No. 13051–80, that he was "general counsel" to another party and "chief counsel and chief tenant for rent rollback" in the Dorchester House proceedings.[2]

Brookens also has represented others on a regular basis before the District of Columbia Rental Accommodations Office.[3] In addition, Brookens has held himself out to the public as an attorney. He has used a letterhead on which his name was printed as "Benoit Brookens II, Esq." He used checks for business purposes on which his name was similarly printed. He corresponded as "Benoit Brookens, of Counsel" on the letterhead of "Law Offices of Qualley, Larson & Jones." He caused himself to be listed in the white pages of the Chesapeake and Potomac Telephone Company's telephone directory as "Brookens Benoit II lwyr," followed by an office address, office phone number, home address, and home phone number.

Pursuant to D.C.App.R. 49(d),[4] the Committee on the Unauthorized Practice of Law (the "Committee") initiated a proceeding against Benoit O. Brookens before a single judge of this court. The court, after a hearing, issued an order directing Broo-

---

1. As noted by the presiding judge in this case, "[t]he petition was actually filed under Rule 46–II(d)(1) in 1984. Effective January 1, 1985, however, Rule 46–II was renumbered as Rule 49. Some minor changes in the language of the rule were made at the same time, but for purposes of this proceeding there are no material differences between the former Rule 46–II and the present Rule 49. For convenience, therefore, this opinion will cite Rule 49 as it now exists, rather than Rule 46–II as it existed in 1984." *In re Brookens,* No. 84–98, Memorandum Opinion at 1 n. 1 (August 1, 1986).

2. Many of the cases in which Brookens either represented others or appeared on behalf of himself and others jointly arise out of a prolonged dispute between the residents and owners of the Dorchester House, an apartment building in Northwest Washington. Brookens was at one time a resident of the Dorchester House, but continued to represent residents even after he moved out.

3. The D.C. Rental Accommodations Office currently is known as the Rental Accommodations and Conversion Division.

4. Violations of the unauthorized practice provisions articulated in D.C.App.R. 49 are to be determined in "a proceeding to be commenced by the Committee on Unauthorized Practice. Such proceedings shall be conducted before a judge of this court designated by the chief judge and shall be governed by the Rules of Superior Court of the District of Columbia which govern civil matters." D.C.App.R. 49(d).

kens to show cause "why he should not (1) be held in contempt for refusing to obey a subpoena issued by this court,[5] and (2) be held in contempt for, and permanently enjoined from, [engaging in] the unauthorized practice of law." Following an evidentiary hearing on this order, the judge found that Brookens had engaged in the unauthorized practice of law and held him in contempt of court. A fine of $300, payment suspended, was imposed, and Brookens was ordered permanently enjoined and prohibited from future violations of D.C.App.R. 49.[6] Brookens appealed the decision, and the Committee cross-appealed.[7]

On appeal, Brookens challenges the denial of his request for a jury trial and disputes the conclusion that he engaged in abuse or exploitation of this court's *pro hac vice* exception to the general prohibition against unauthorized practice of law. D.C.App.R. 49(c)(1). In its cross-appeal, the Committee seeks reversal of the finding that Brookens' activities before a Dis-

trict of Columbia agency did not constitute the unauthorized practice of law.[8]

## II. *Jury Trial Issue*

Prior to the hearing in this case, Brookens requested a jury trial; his request was denied. In denying Brookens' request, the presiding judge noted he was aware that he was thereby restricting the range of his sentencing options in the event of a finding of contempt. *See In re Evans*, 411 A.2d 984, 989–93 (D.C.1980). Memorandum Opinion, *supra*, at 9 n. 8. Brookens here challenges the denial of his request for a jury trial.[9]

■ "A criminal contempt proceeding is not a criminal prosecution, and consequently not all procedures required in a criminal trial are necessary in a hearing on a charge of contempt." *In re Wiggins*, 359 A.2d 579, 580 (D.C.1976). Criminal contempt defendants, however, are entitled to those procedures inherent in fundamental due process, including the right to trial by jury under certain circumstances. *Id.* at 581.

---

**5.** Because no evidence was submitted concerning the alleged refusal to obey a subpoena, the court made no findings with respect to that allegation. Memorandum Opinion, *supra*, at 2 n. 3.

**6.** Specifically, Brookens was enjoined and prohibited from "(1) representing any person other than himself, or any corporation, association, partnership, organization, or other entity, in any court in the District of Columbia unless he is a member of the bar of the court in which such representation takes place; (2) using such terms as "lawyer," "attorney," "counsel," "counselor" or "counsellor," "Esq.," or "Esquire" to refer to himself in such manner as to convey the impression that he is entitled or authorized to practice law in the District of Columbia, or in any way holding himself out as authorized or qualified to practice law in the District of Columbia; (3) engaging in any manner in the practice of law in the District of Columbia, as that term is defined in Rule 49(b)(3) of the General Rules of this court; and (4) engaging in any other conduct prohibited by Rule 49(b)(2) of the General Rules of this court."

**7.** Two days before oral argument in this case, the Committee filed a Motion to Strike two of the three briefs filed by Brookens, one filed on April 27, 1987 and the other filed July 7, 1987. We find that although the April 27, 1987 brief does not technically comply with Rule 28(i), neither prejudice to the Committee nor unfair advantage for Brookens resulted. We, therefore, deny the Committee's motion as to that

brief. As to the July 7, 1987 brief, we deny the Committee's motion, and refer the Committee to Rule 28(c) which provides an opportunity for the appellee in a cross-appeal to file a brief in reply to the response of the appellant.

**8.** Brookens also claims that the evidence was insufficient to support the conclusion that he violated D.C.App.R. 49. Our review of the record convinces us that the testimonial and documentary evidence supports the court's finding that Brookens, for a prolonged period of time, held himself out to the public as an attorney authorized to practice in the District of Columbia. His use of letterhead and bank checks bearing his name and the designation "Esq.," his appearances on behalf of others before various tribunals in the District, his testimony in a number of cases, as well as the telephone directory listings indicating that he was a "lwyr" practicing in the District all point to this conclusion.

**9.** The Committee argues that Brookens was not entitled to a jury trial because the contempt proceedings were civil in nature. We find, however, that this case was prosecuted and tried as a criminal contempt procedure. Therefore, without addressing whether the procedure should have been limited to civil contempt in the first instance, we analyze Brookens' challenge to the denial of his request for a jury trial from the vantage point of a criminal contempt proceeding.

The entitlement to a jury trial may derive from either of two sources, the Sixth Amendment to the Constitution of the United States or D.C.Code § 16–705 (1981).

■ This court has inferred from the language of D.C. Code § 16–705(b) that in order for the offense of contempt to be considered non-petty, it must be one in which the fine exceeds $300 or the imprisonment exceeds six months. *In re Evans, supra,* 411 A.2d at 990. It is clear, then, that *Evans* and *Wiggins* taken together restrict those contempt proceedings in which a jury trial is required pursuant to D.C.Code § 16–705(b) to those cases *resulting in imprisonment for more than six months. Evans, supra,* 411 A.2d at 990 n. 4 (emphasis added). Accordingly, unlike other criminal proceedings, *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 1452, 20 L.Ed.2d 491 (1968), the statutory right to a jury trial in a contempt proceeding is a function of the actual sentence imposed rather than the potential sentence to which the defendant is exposed by virtue of the charges against him. *See generally* LaFave and Israel, Criminal Procedure 21.1 (1984); Whitehead, Criminal Procedure 22.04 (1980). We conclude, then, that in the case before us, because the actual penalty imposed was a fine that did not exceed $300, there was no violation of Brookens' statutory right to trial by jury.

■ Independent of any statutory right, a defendant in a criminal contempt proceeding may also have a Sixth Amendment entitlement to a jury trial. The Sixth Amendment right to a jury trial arises where the defendant is charged with a serious or non-petty offense. *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). As we noted in *Evans, supra,* an alleged criminal contemnor must be given access to a jury trial unless the legislature has authorized a maximum penalty that renders the con-

tempt a petty offense or unless the penalty actually imposed is within the constitutional limit of six months. *In re Evans, supra,* 411 A.2d at 991, citing *Dyke v. Taylor Implement Mfg. Co.* 391 U.S. 216, 219–20, 88 S.Ct. 1472, 1474–75, 20 L.Ed.2d 538 (1968). In the District of Columbia, D.C. Code § 16–705(b), while not the source of a jury trial right for a person charged with criminal contempt where the penalty imposed is only a fine, embodies the "appropriate standard for determining the seriousness of the contempts committed." *In re Evans, supra,* 411 A.2d at 992.[10] Accordingly, as in *Evans,* under the Sixth Amendment, a person may not be convicted of criminal contempt and fined more than $300, even if no prison sentence is imposed, without benefit of a jury trial. Once again, because the fine imposed did not exceed $300, Brookens' Sixth Amendment right to trial by jury was not violated.

Because there is no statutory maximum penalty for criminal contempt, the usual tests for entitlement to trial by jury, which instruct us to look to the maximum penalty to which the defendant is exposed, are inapplicable. As the *Evans* court recognized and as this case exemplifies, "[t]his formulation places the trial judge in the difficult position of having to look ahead to the sentence he or she might impose, before hearing the evidence, when ruling on a motion for a jury trial for an offense for which there is no statutory maximum penalty." *Id.* at 991 n. 5. Nevertheless, because the presiding judge did just that and the actual fine imposed did not rise to a level sufficient to trigger either the statutory or constitutional right to jury trial, we affirm the denial of Brookens' request.

### III. *Pro Hac Vice*

■ Brookens also challenges the conclusion that he violated this court's rule governing *pro hac vice* appearances, D.C. App.R. 49(c)(1), if not, technically then in

---

**10.** In contempt proceedings, we have gauged the seriousness of an offense by looking to the maximum penalties that statutorily may be imposed without benefit of a jury trial. D.C.Code § 16–705(b) entitles a criminal defendant to trial by jury if "(1) the case involves an offense which is punishable by a fine or penalty or [sic] more than $300 or by imprisonment for more than ninety days (or for more than six months in the case of the offense of contempt of court), and (2) the defendant demands a trial by jury and does not subsequently waive a trial by jury in accordance with subsection (a), the trial shall be by jury."

spirit.[11] The judge stated, "the *pro hac vice* rule is intended for special cases or unusual circumstances. It is not a device to circumvent bar membership requirements or rules against unauthorized practice. The court concludes from the evidence that respondent has repeatedly abused the *pro hac vice* procedure." Memorandum Opinion, *supra,* at 8–9.

Brookens claims that in each of his *pro hac vice* appearances, he provided the correct paperwork and that he never exceeded five annual appearances, the maximum number permissible. The judge found that Brookens' use of the rule amounted to impermissible exploitation of it. We agree. Brookens, although licensed elsewhere, has never practiced anywhere but in the District of Columbia. His offices were in the District and his appearances were before courts and agencies in the District of Columbia.[12] Moreover, although he appeared five or fewer times in any year, it cannot be said that his appearances were out of the ordinary. Rather his appearances were an integral part of his otherwise unauthorized practice in this jurisdiction.

We here reiterate the proposition that apparent technical compliance with a court rule is not dispositive of whether that rule has been violated. *See Shamey v. Hickey,* 433 A.2d 1111 (D.C.1981). In that case, we held that a corporation cannot circumvent Super.Ct.Sm.Cl.R. 9(b), which prohibits a corporation from appearing *pro se,* by selling its claim against a debtor to a corporate operative and thereby "fitting" under D.C. Code § 28–2303 (1981) which permits an assignee of a debt to maintain an action on the debt *pro se.* About this sort of manipulation of the court rules and Code provisions, we said, "[w]e cannot sanction such a convenience, because it involves not only the circumvention of a court rule, but also the unauthorized practice of law." *Shamey, supra,* 433 A.2d at 1112.

Similarly, in the case before us, it is clear that an appearance *pro hac vice* is meant to be an exception to the general prohibition against practicing law in the District without benefit of membership in the District of Columbia Bar. As an exception, it is equally clear, that it is designed as a privilege for an out-of-state attorney who may, from time to time, be involved in a particular case that requires appearance before a court in the District. In that event and with special permission from the

---

**11.** D.C.App.R. 49(c)(1) provides:

> Nothing herein shall prohibit a person who is a member in good standing of the highest court of any state but who is not an enrolled, active member of the Bar of this court (hereinafter "attorney") from appearing and participating in a particular action or proceeding in any court of the District of Columbia if special permission therefor has been granted by any such court, pro hac vice; provided however that said attorney shall not appear or participate in more than five actions or proceedings in any calendar year;....

**12.** The rule governing *pro hac vice* appearances, Super.Ct.Civ.R. 101(a)(3), requires the contemporaneous entry of an appearance by a member of the District of Columbia Bar. Super.Ct.Civ.R. 101(a)(3) provides that a person licensed to practice law in another jurisdiction,

> may enter an appearance, and file pleadings in this Court, and if granted permission by the Court may participate in proceedings in this Court, *pro hac vice,* provided that such attorney joins of record a member in good standing of the District of Columbia Bar who will at all times be prepared to go forward with the case, who shall sign all papers subsequently filed and shall attend all subsequent proceedings in the action unless this latter requirement is waived by the judge presiding at the proceeding in question. An attorney seeking permission to appear under this section shall file a *praecipe* indicating his name, address, telephone number, the jurisdiction(s) where he is a member of a bar and the number of times he has previously sought to appear under this rule. The attorney shall also serve a copy of the *praecipe* on the District of Columbia Court of Appeals' Committee on Unauthorized Practice.... Any member of the District of Columbia Bar who joins the attorney seeking special permission to appear shall also sign the *praecipe....*

The evidence at trial revealed that attorneys who agreed to contemporaneous entry of appearance with Brookens were in all other respects unrelated to the cases, and Brookens was the sole attorney representing the party or parties involved. We observe that failure of the co-signing attorney to comply with this rule may constitute a violation of this court's disciplinary rules. *See, e.g.,* DR 3–101(1) (A lawyer shall not aid a non-lawyer in the unauthorized practice of law). *See also* Copaken, *Group Legal Services for Trade Associations,* 66 Mich.L.Rev. 1211, 1216 (1968).

involved tribunal, the attorney may proceed. To interpret the rule as Brookens suggests would render it an endorsement of practice by attorneys in the District who are not licensed in the District—hardly an exception to D.C.App.R. 49(b) at all.

## IV. *Lay Practice Before D.C. Agencies*

■ Since 1979, Brookens has appeared on behalf of clients at hearings before the Rental Accommodations Office. The Committee urges that these appearances constitute the practice of law, and because Brookens is not a member of the District of Columbia Bar, these appearances constitute the unauthorized practice of law as defined in D.C.App.R. 49(b). Following a hearing on the issue, the judge held:

> Respondent's activities before the Rental Accommodations office must be considered in a different light. Because Rule 49 does not deal with representation of others before administrative agencies, and because in this instance respondent's activities before the Rental Accommodations Office were authorized under the rules of that agency, the court concludes that respondent has not engaged in the unauthorized practice of law, and has not violated Rule 49, by representing persons other than himself before the Rental Accommodations Office.

Memorandum Opinion, *supra*, at 9.

The Committee advances two main arguments designed to establish that the court's ruling is erroneous. First, the Committee argues that any District of Columbia agency regulation that purports to permit anyone other than an attorney licensed to practice law in the District of Columbia to appear on behalf of clients is invalid because it exceeds the scope of the District of Columbia Administrative Procedure Act. D.C.Code §§ 1–1501 *et seq.* (1981). D.C. Code § 1–1509(b) provides in part that "[e]very party [in a contested case] shall have the right to present in person or by counsel his case or defense...." The Committee argues that D.C.Code § 1–1509(b) should be interpreted to limit a litigant in an agency proceeding to one of two choices: representing himself or hiring an active member of the District of Columbia Bar to act as counsel. Accordingly, the Committee asks this court to find that the agency rule at issue in this case, 14 DCMR § 3202.1 (1986), is *ultra vires* this part of the D.C. Administrative Procedure Act.

Second, the Committee argues that this court, pursuant to D.C.Code § 11–2501(a) (1981), has the inherent and exclusive authority to define and regulate the practice of law in the District of Columbia.[13] The Committee asks us to find that our statutory authority to promulgate rules with respect to the practice of law in the District, D.C.Code § 11–2501, supersedes a local agency's statutory authority to adopt procedures governing the qualifications of those persons who represent parties in proceedings before the agency. D.C.Code § 1–1503 (1981).

The great weight of authority renders it almost universally accepted that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction. *See, e.g., Attorney General of Maryland v. Waldron*, 426 A.2d 929, 934–35, 289 Md. 683, 692–93 (1981); *Bennion, Van Camp, Hagen & Ruhl v. Kassler Escrow, Inc.*, 635 P.2d 730, 735–36, 96 Wash.2d 443, 451–53, (1981) (*en banc*); *Pennsylvania Public Utility Commission Bar Ass'n v. Thornburgh*, 434 A.2d 1327, 1331, 62 Pa.Commw. 88, 96–97 (1981), *aff'd*, 498 Pa. 589, 450 A.2d 613 (Pa.1982); *Hunt v. Maricopa County Employees Merit System Commission*, 619 P.2d 1036, 1039, 127 Ariz. 259, 262, *reh'g denied* (Ariz.1980) (*en banc*) and cases cited therein; *Lukas v. Bar Ass'n of Montgomery County, Maryland, Inc.*, 371 A.2d 669, 35 Md.App. 442

---

**13.** D.C.Code § 11–2501(a) provides, "[t]he District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." It is generally conceded that the constitutional or statutory power to control bar admissions and discipline of members entails the authority to control unauthorized practice. *State v. Dinger*, 109 N.W.2d 685, 689, 14 Wis.2d 193, 200–202 (1961); *Henize v. Giles*, 490 N.E.2d 585, 589, 22 O.B.R. 364, 367–68, 22 Ohio St.3d 213 (1986).

(1977) (power to define and regulate practice of law vested solely in judiciary and legislation purporting to do likewise is a "mere aid" to the courts). *See also* VA. CONST. ART. 6, § 1 Intro. (1986). In some states, the highest court, while refusing to relinquish this inherent power, has recognized that the power is not exclusive or has "as a matter of comity" deferred to legislative regulation as a declaration of public policy. Comment, *Control of Unauthorized Practice of Law: Scope of Inherent Judicial Power*, 28 U.CHI.L.REV. 162, 169 (1960). *See also Heslin v. Connecticut Law Clinic of Trantolo and Trantolo*, 461 A.2d 938, 190 Conn. 510 (1983) (power to regulate attorney conduct and discipline is inherent but not necessarily exclusive); *Hustedt v. Workers' Compensation Appeals Board*, 636 P.2d 1139, 1143, 178 Cal. Rptr. 801, 805, 30 Cal.3d 329 (1981) (*en banc*) (although judiciary has inherent power to regulate practice of law, court has respected legislative exercise, pursuant to the police power, of "reasonable degree of regulation and control over the profession and practice of law").

In the specific area of lay representation before administrative agencies, we observe that the question has attracted national interest. *See On Letting the Laity Liti-gate: The Petition Clause and Unauthorized Practice Rules*, 132 U.PA.L.REV. 1515 (July 1984); Rhode, *Policing the Professional Monopoly: A Constitutional and Empirical Analysis of Unauthorized Practice Prohibitions*, 34 STAN.L.REV. 1 (1981). We note, for example, that the Virginia Supreme Court, rejecting bar recommendations, has empowered state agencies to allow lay representation in limited circumstances. Forty Second Annual Report of the Virginia Bar at 74. Maryland, however, has taken a different approach. A Maryland administrative agency may not "grant the right to practice law to an individual who is not authorized to practice law." MD.CODE, State Government, § 10–204(a)(2)(i).

In the instant case, the judge found, and the Committee does not contest, the District of Columbia Rental Accommodations Office through its regulations authorizes lay representation.[14] These regulations were adopted pursuant to D.C.Code § 1–1503.[15] The Committee urges that the agency rule, 14 DCMR 3202.1, is *ultra vires* D.C.Code § 1–1509(b) which provides that "[e]very party [in a contested case] shall have the right to present in person or by counsel his case or defense." The Com-

---

**14.** 14 DCMR § 3202.1 (1986) and 14 DCMR § 3202.3 (1986) provide:

§ 3202.1 Each party to a petition may choose to represent himself or herself or may choose to be represented by another person.

§ 3202.3 The representative of a party before the RAO or the Commission does not have to be an attorney.

*See also* 14 DCMR § 3308.3 (1986) which permits representation by non-attorneys in appeals before the Rental Housing Commission. We note that in March 1986, however, the agency amended its rules regarding lay representation in proceedings under the 1980 Rental Housing Act, thereby restricting but not eliminating lay representation before the Rental Accommodations Office (now the Rental Accommodations and Conversion Division) and the Rental Housing Commission. *See* 33 D.C.Reg. at 1336 (March 7, 1986). Section 3812.4 provides:

A person may be represented in any proceeding before the Commission by one of the following:

(a) An attorney admitted to the practice of law in the District of Columbia, pursuant to the Rules of the District of Columbia Court of Appeals;

(b) An attorney admitted to practice before the highest court of any state upon the granting by the Commission of a motion for special appearance;

(c) RESERVED

(d) A family member or close personal friend of a party, where the party is incapable of presenting his/her case because of a language barrier, physical infirmity, or mental incapacity; provided that the family member or friend receives no compensation for representing the party before the Commission.

33 D.C.Reg. at 1485.

**15.** D.C.Code § 1–1503(b)–(c) provides that "each independent agency shall establish procedures in accordance with this subchapter" and "the procedures required to be established by subsections (a) and (b) of this section shall include requirements of practice before the Mayor and each agency." In the balance of procedural rules adopted by an agency, the agency must conduct hearings in accord with well-established rules of procedure. *Brown v. District of Columbia Board of Zoning Adjustment*, 413 A.2d 1276, 1280 (D.C.1980).

mittee argues that because the regulation is *ultra vires* the District of Columbia Administrative Procedure Act, it is invalid. We disagree.

On its face, D.C.Code § 1–1509(b) articulates the rights of a party to representation in contested cases before administrative agencies of the District of Columbia. Since the provision lists a party's minimum entitlements—pro se appearance or representation by counsel—it leaves open the possibility that an agency might wish to expand those rights to include, perhaps, lay representation. *Compare* Md.Code, State Government, § 10–204 (expressly restricting such agency action). Nothing in the legislative history of this D.C.Code provision suggests otherwise. Pub.L. No. 90–614, § 10, 82 Stat. 1208 (Oct. 21, 1968); H.R.Rep. No. 202, 90th Cong., 1st Sess. (1967); S.Rep. No. 1581, 90th Cong., 2d Sess. (1968). Indeed, the only reference to the statutorily provided breadth of representation due parties in contested cases is to be found in the Senate's summary of the Bill's provisions. "The bill itself affords no right to a hearing, but where such right exists it requires that the parties have full and timely notice, and that they be afforded the opportunity to present evidence and argument. The burden of proof is placed on the proponent of an order or rule. *The right to counsel is specifically guaranteed.*" S.Rep. No. 1581, *supra,* pt. 2, at 7 (emphasis added). We hold, therefore, that the regulations of the Rental Accommodations Office authorizing lay representation of a party at an agency proceedings are not *ultra vires* D.C.Code § 1–1509(b).

Accordingly, the only remaining question is whether, in light of this court's inherent power to define and regulate the practice of law, a particular agency has the authority to adopt regulations permitting lay representation. In 1985, the Committee transmitted to this court its *Report of the Committee on Unauthorized Practice of Law Concerning Unauthorized Practice before Administrative Agencies of the District of Columbia* (hereinafter cited as the *Re-*

*port*) in which it reviewed the current status of D.C. agency regulations permitting non-attorneys to practice before the various agencies and made recommendations on the subject.[16] Again in 1987, a revised version of the proposed amendments was circulated to the court, and finally as recently as March 4, 1987, the Committee submitted a response to the comments generated by members of this court regarding the Report and the proposed amendments. In short, the issue is and has been the object of ongoing inquiry and study by this court.

While it is clear that this court is empowered to define the practice of law so that it either excludes or includes lay representation before agencies, it is also true that such an undertaking implicates important public policy questions. Administrative review of D.C.App.R. 49 is currently and formally underway by this court, the affected agencies, and the Committee. Progress has been made, and such an administrative approach is the appropriate mechanism under these circumstances. In addition, because the Committee places before us an issue broader in scope than that litigated here, we are inclined not to interrupt the progress that has already been made in solving the apparent conflict between the rules of this court and the regulations of some District of Columbia agencies. Rather, we conclude, in the circumstances presented here, to affirm the ruling of the presiding judge, reserving the larger questions in this regard to the full court in its administrative capacity.

Accordingly, the judgment and order in this matter in all respects is

*Affirmed.*

---

**16.** Because the *Report* contained information required to be kept confidential pursuant to

D.C.App.R. 49(e)(2)(a), the document has remained under seal.