[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Beem*, Slip Opinion No. 2021-Ohio-2821.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2821

OHIO STATE BAR ASSOCIATION *v.* BEEM.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Beem*, Slip Opinion No. 2021-Ohio-2821.]

*Unauthorized practice of law—Advising and assisting another in his legal proceedings by, among other things, preparing and filing a motion in his case and providing legal advice regarding which legal arguments he should make and which evidence he should submit to the court— Permanent injunction issued and civil penalty imposed.*

(No. 2020-1580—Submitted March 3, 2021—Decided August 19, 2021.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 17-06.

_____

**Per Curiam.**

{¶ 1} In a December 2017 complaint, relator, Ohio State Bar Association, charged respondent, Kimberly R. Beem, with engaging in the unauthorized

practice of law. The complaint alleged that Beem, who is not licensed to practice law in Ohio, rendered legal advice, counsel, and assistance to Charles McCoy with regard to a pro se prosecutorial-misconduct complaint that he had filed in the Licking County Court of Common Pleas. On March 10, 2018, Beem sent an email to relator and the secretary for the Board on the Unauthorized Practice of Law in which she generally denied the allegations contained in the complaint.

{¶ 2} A three-member panel of the board was appointed to hear the case. The panel chair granted relator's motion for leave to file a motion for summary judgment instanter. The motion for summary judgment alleged that there were no genuine issues of material fact and that relator was entitled to judgment as a matter of law. Beem opposed the motion for summary judgment, arguing that her conduct did not constitute the unauthorized practice of law.

{¶ 3} In March 2020, the panel issued a report finding that Beem's conduct constituted one egregious instance of the unauthorized practice of law. The panel therefore recommended that we grant relator's motion for summary judgment, enjoin Beem from engaging in additional acts of the unauthorized practice of law, and order her to pay a civil penalty of $10,000. The board adopted the panel's findings and recommendations. No objections have been filed.

{¶ 4} After reviewing the record, we agree that Beem's conduct constitutes a single offense of the unauthorized practice of law in Ohio and that an injunction is warranted. However, we find that a $5,000 penalty is more appropriate.

**Beem's Conduct**

{¶ 5} While reviewing this court's docket in April or May 2014, Beem noticed that Charles McCoy had filed several cases in this court regarding events that had occurred in Licking County, Ohio. After learning that McCoy was incarcerated at the London Correctional Institution, she began to communicate

with him through a company that offers email, videoconferencing, and other services to incarcerated persons.

{¶ 6} McCoy informed Beem that he had commenced an action to have the Licking County prosecutor removed from office. Beem, who believed that the prosecutor had helped two of her siblings deprive her of her inheritance and orchestrated the prosecution of harassment charges against her, decided to help McCoy. She offered him information about the prosecutor that she had obtained through public records.

{¶ 7} Beem communicated with McCoy about his case against the prosecutor by email and videoconference from May through August 2014. She performed legal research on McCoy's behalf, transmitted that research to him, and monitored the online docket in his case. She also gave McCoy advice regarding his rights, which legal arguments he should make and when he should make them, and which evidence he should submit to the court.

{¶ 8} Although Beem was not a party to McCoy's lawsuit against the prosecutor, in June 2014, she prepared and filed a document in that case entitled, "Documentation in Support of Affidavit of Kimberly R. Beem," along with a flash drive containing audio, video, and written documentation in support of McCoy's case—none of which had been reviewed by McCoy.

{¶ 9} At McCoy's request, Beem also researched the law regarding a party's right to be present during depositions. She reviewed the websites hosted by relator and this court and discussed with McCoy whether, based on what she had found, he should be permitted to participate in depositions related to his case via videoconference. On June 23, 2014, she filed a motion on McCoy's behalf to permit videoconferencing for all depositions, to reserve McCoy's right to examine all deponents, and to assess all costs of the videoconferencing against the prosecutor. In the final paragraph of the motion, Beem stated, "Due to the time sensitivity of this matter, Mr. McCoy has requested that Kimberly R. Beem, a

layperson, who has filed an affidavit in support of this case, file this motion on his behalf." In the signature block, she typed, "Respectfully submitted on behalf of and at the direction of Charles McCoy," and signed her name. In a judgment entry filed later that day, the trial judge ordered the motion stricken and stated that he was notifying the board of Beem's conduct.

{¶ 10} At McCoy's request, Beem traveled to Newark, Ohio, the next day to speak with his mother and sister. As named plaintiffs in McCoy's case, they were scheduled to be deposed that morning. Beem instructed them to tell the truth. McCoy's mother inquired about Beem's stricken motion, and Beem told her that they could ask the prosecutor to delay the matter until the issue of McCoy's participation could be resolved. Then they went to the prosecutor's office, where Beem made that request.

{¶ 11} In a series of emails Beem sent to McCoy on July 8, she referred him to a provision of the Ohio Constitution relevant to the issue of deposition testimony, asked who he had identified as his witnesses, and told him that she wished he had waited until he had addresses before filing his witness list. She asked McCoy to remind the trial court that he had filed his complaint before having had any contact with Beem. She also told him:

> Maybe it's time to file a motion to ask [the trial judge] to disqualify himself due to his conflict of interest.
>
> * * *
>
> I am not sure but I think you want your motion to say that you want [the trial judge] to disqualify himself. It's called recusing but I think technically he would need to disqualify himself. If he doesn't agree, I looked up the statute to use for the Supreme Court—not legal advice—a simple Google search then copy and paste.

4

{¶ 12} A couple days later, Beem suggested various arguments that McCoy could make to get the depositions of his mother and sister thrown out. She also told McCoy that he needed to be prepared to file an affidavit of disqualification in this court on about August 7 if the trial judge did not recuse himself at least seven days before the scheduled nonoral hearing on the prosecutor's motion to dismiss McCoy's case.

{¶ 13} On July 11, Beem told McCoy that she was going to do some research on hearings and nonoral hearings and offered to prepare an affidavit in case he needed to "go to the Supreme Court to have [the trial judge] disqualified." She suggested concepts and arguments regarding the "key" issues of bias, prejudice, and ex parte communications. She reminded McCoy to address the trial judge's potential bias toward his key witnesses and identified at least one example of that alleged bias. Beem also suggested arguments in opposition to the prosecutor's motion to dismiss and sent McCoy the text of R.C. 309.05, which governs the removal of a prosecuting attorney for neglect or misconduct.

{¶ 14} Several days later, Beem offered her opinion regarding what would happen if the trial judge recused himself, and she stated that she believed that the appointment of a Franklin County judge to replace him would result in the best outcome for McCoy's lawsuit. On July 18, she wrote that she had found "the Pengov case." *White v. Pengov*, 146 Ohio App.3d 402, 2001-Ohio-1668, 766 N.E.2d 228. She attempted to distinguish the facts in *Pengov* from the facts of McCoy's case, explaining that *Pengov* involved a single instance of misconduct, whereas McCoy had alleged ongoing prosecutorial misconduct. She also noted that *Pengov* addressed the need for the misconduct to have occurred during the prosecutor's current term—an issue that the prosecutor had raised in his motion to dismiss McCoy's case.

{¶ 15} In the following days, she repeatedly advised McCoy about the importance of the timing of the filing of his affidavit of disqualification in this court. On July 23, Beem told McCoy, "After you file for recusal with the Supreme Court, [the trial judge] can't rule on any motions until that is resolved. So then the ball will be in [the chief justice's] court. I don't see how she can say no based on what [the trial judge] has already done but you never know." A few days later, she wrote, "Let me see how this plays out but I think we need to invite Special Agent [J.J.] to testify as to how he became involved in the felony falsification in support of the criminals and [C.P.]" McCoy responded, "Ok, I won't do anything till you let me know." Beem replied, "Let's wait until BCI [the Bureau of Criminal Investigation] Superintendent [T.S.] has an opportunity to respond. If he doesn't, then we need to add [C.P., S.F., and J.J.]."

{¶ 16} On July 30, McCoy sent Beem an email stating that he had written a letter inviting BCI to review and investigate the case but that he would not send it until he got her advice. In her response, Beem stated, "As far as the BCI, you can't invite them to investigate. They only get involved at the request of law enforcement or prosecutors." She then described the evidence that she had submitted to the court regarding other cases in which she believed there had been prosecutorial misconduct and stated that the special prosecutor had to look at all of it.

**Beem Engaged in the Unauthorized Practice of Law**

{¶ 17} This court has original jurisdiction over the admission to the practice of law in Ohio, the discipline of persons so admitted, and "all other matters relating to the practice of law," Article IV, Section 2(B)(1)(g), Ohio Constitution, which includes the regulation of the unauthorized practice of law, *Greenspan v. Third Fed. S. & L. Assn.*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 16. The purpose of that regulation is to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated

with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 18} We have defined the unauthorized practice of law to include both the "[h]olding out to the public or otherwise representing oneself as authorized to practice law in Ohio" and the "rendering of legal services for another" by any person who is not authorized to practice law under our rules. Gov.Bar R. VII(2)(A)(1) and (4). The practice of law "embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts." *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934), paragraph one of the syllabus; *see also Cincinnati Bar Assn. v. Estep*, 74 Ohio St.3d 172, 173, 657 N.E.2d 499 (1995). It also "encompasses giving legal advice and counsel." *Cincinnati Bar Assn. v. Telford*, 85 Ohio St.3d 111, 112, 707 N.E.2d 462 (1999), citing *Cleveland Bar Assn. v. Misch*, 82 Ohio St.3d 256, 259, 695 N.E.2d 244 (1998).

{¶ 19} This case was submitted to the board on relator's motion for summary judgment. "Summary judgment may be granted when properly submitted evidence, construed in favor of the nonmoving party, shows that the material facts in the case are not in dispute and that the moving party is entitled to judgment as a matter of law because reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." *Ohio State Bar Assn. v. Heath*, 123 Ohio St.3d 483, 2009-Ohio-5958, 918 N.E.2d 145, ¶ 9; *see* Civ.R. 56(C).

{¶ 20} The parties agreed on the material facts, which were established through Beem's deposition testimony and undisputed evidence of her communications with McCoy. However, they disagreed as to whether that conduct constituted the unauthorized practice of law. The board found that the evidence proved that Beem had engaged in a single egregious instance of the

unauthorized practice of law by providing legal advice and counsel to McCoy and his family.

{¶ 21} After thoroughly reviewing the evidence submitted both in favor of and in opposition to summary judgment, we find that reasonable minds can come to but one conclusion:  Beem engaged in the unauthorized practice of law by (1) preparing and filing documentation in support of her own affidavit in McCoy's case against the prosecutor, (2) preparing and filing a motion seeking authorization for McCoy to participate, by videoconference from prison, in depositions conducted in that case, (3) providing legal advice and counsel to McCoy regarding his alleged right to be present at depositions in that case, which legal arguments he should make and when he should make them, and which evidence he should submit to the court, and (4) providing legal advice and counsel to McCoy's family after the court struck her motion to permit videoconferencing of their depositions.  In short, Beem advised McCoy how to handle and prosecute his case against the prosecutor, though she was not qualified to do so.

## An Injunction and a Civil Penalty Are Warranted

{¶ 22} Having found that Beem engaged in the unauthorized practice of law, the board recommends that we permanently enjoin her from engaging in further acts of the unauthorized practice of law in Ohio and that we impose the maximum civil penalty of $10,000 for that offense.

{¶ 23} In determining the appropriate sanction, Gov.Bar R. VII(8)(B) instructs us to consider (1) the degree of the respondent's cooperation during the investigation, (2) the number of times the respondent engaged in the unauthorized practice of law, (3) the flagrancy of the respondent's violations, (4) any harm that the violations caused to third parties, and (5) any other relevant factors, which may include the aggravating and mitigating circumstances identified in UPL Reg. 400(F).  *See also Disciplinary Counsel v. Ward*, 155 Ohio St.3d 488, 2018-Ohio-5083, 122 N.E.3d 168, ¶ 13.

{¶ 24} It appears that Beem has cooperated in relator's investigation in that she voluntarily appeared and was deposed in October 2015, produced copies of the emails she exchanged with McCoy, and filed a response to relator's August 2019 motion for summary judgment. During her deposition, she admitted to the conduct described above—though she did not admit that it constituted the unauthorized practice of law. She also represented that she had ceased engaging in such conduct, and there is no evidence that she engaged in the unauthorized practice of law since the conduct under review here occurred.

{¶ 25} Although relator alleged that the evidence demonstrated that Beem had committed "a large number of violations," we find that her conduct, which involved just one legal matter and occurred over a period of several months in 2014, constitutes a single offense of the unauthorized practice of law. While Beem's conduct was flagrant and continued even after she learned that the trial judge had notified the board of her conduct, there is no evidence that she was paid for her advice and counsel. Nor does it appear that McCoy has suffered any harm as the result of Beem's unauthorized practice of law—though her actions undoubtedly created unnecessary work and wasted valuable prosecutorial and judicial resources.

{¶ 26} On these facts, we find that Beem's conduct is not among the most egregious acts that we have found to constitute the unauthorized practice of law. Instead, the facts here are more comparable to the facts of *Disciplinary Counsel v. Bukstein*, 139 Ohio St.3d 230, 2014-Ohio-1884, 11 N.E.3d 237. Beem prepared and filed two documents and gave legal advice and counsel in a single case; Bukstein made legal arguments on behalf of parties in two domestic-relations cases, drafted a motion for a party to sign pro se, and sent communications demanding discovery, while holding herself out as a "civil-rights advocate." We imposed a $5,000 civil penalty for each of Buckstein's two offenses of the

unauthorized practice of law. We find that a $5,000 penalty is similarly appropriate for Beem's one offense.

**Conclusion**

{¶ 27} Accordingly, we permanently enjoin Kimberly R. Beem from engaging in further acts constituting the unauthorized practice of law in Ohio. We also order Beem to pay a civil penalty of $5,000 for the acts that we have found to constitute the unauthorized practice of law. Costs are taxed to Beem.

Judgment accordingly.

DEWINE, DONNELLY, and BRUNNER, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., concur except that they would impose a $10,000 penalty.

STEWART, J., concurs in judgment only.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 28} I agree with the majority that respondent, Kimberly Beem, engaged in the unauthorized practice of law when she exercised professional judgment by providing legal advice and counsel to Charles McCoy as to the timing of the filing of his affidavit of disqualification and that she should be permanently enjoined from engaging in further acts constituting the unauthorized practice of law in Ohio. I part ways with the majority, however, as to the remaining charged conduct because Beem did not exercise professional judgment in those instances Moreover, as discussed below, I also disagree with the imposition of a civil penalty. Therefore, I concur in part and dissent in part.

*The unauthorized practice of law requires the exercise of professional judgment*

{¶ 29} There is no universally accepted definition of "the practice of law," *Disciplinary Counsel v. Deters*, __ Ohio St.3d __, 2021-Ohio-2706, __ N.E.3d __, ¶ 48 (Kennedy, J., concurring in judgment only), citing Buhai, *Act Like a Lawyer,*

10

*Be Judged Like a Lawyer: The Standard of Care for the Unlicensed Practice of Law*, 2007 Utah L.Rev. 87, 94, and formulating a comprehensive definition has proved to be elusive, *id.* "The reason it is so difficult to formulate a universal definition for 'the practice of law' is that ' "[l]aw permeates so many aspects of [our] personal lives and commercial affairs that * * * most individuals, whether or not they are lawyers, are knowingly or unknowingly encountering and interpreting laws on a daily basis * * *." ' " (Brackets and ellipses added in Zurek.) *Id.* at ¶ 49 (Kennedy, J., concurring in judgment only), quoting Zurek, *The Limited Power of the Bar to Protect Its Monopoly*, 3 St. Mary's J. Legal Mal. & Ethics 242, 248-249 (2013), quoting Luppino, *Multidisciplinary Business Planning Firms: Expanding the Regulatory Tent Without Creating a Circus*, 35 Seton Hall L.Rev. 109, 131 (2004). An all-inclusive definition has also eluded us. *Id.* at ¶ 50 (Kennedy, J., concurring in judgment only). .

{¶ 30} In my view, the "focus of our inquiry in matters in which a layperson, that is, a person who lacks a valid Ohio law license, is charged with engaging in the unauthorized practice of law by providing legal advice to others should be on whether the person exercised professional judgment in giving the legal advice." *Id.* at ¶ 47 (Kennedy, J., concurring in judgment only).

> "[P]rofessional judgment lies at the core of the practice of law." *Iowa State Bar Assn. Commt. on Professional Ethics & Conduct v. Baker*, 492 N.W.2d 695, 701 (Iowa 1992). And exercising professional judgment " 'require[s] more than the most elementary knowledge of the law, or more than that which [a layperson] may be deemed to possess,' " *Lukas v. Montgomery Cty. Bar Assn.*, 35 Md.App. 442, 448, 371 A.2d 669 (1977), quoting Annotation, *What Amounts to Practice of Law*, 111 A.L.R. 19, 24-25 (1937). Moreover, exercising professional judgment is

an art that requires "lawyers [to] determine what the issues are and use their knowledge of the law to solve them in an ethical way." *Baker* at 701. Professional judgment is called for when a judgment "requires the abstract understanding of legal principles and a refined skill for their concrete application." *Dauphin* [*Cty. Bar Assn. v. Mazzacaro*, 465 Pa. 545,] 553[, 351 A.2d 229 (1976)]. Laypersons, in contrast, use their legal knowledge "for informational purposes alone." *Baker* at 701. .

*Deters*, __ Ohio St.3d __, 2021-Ohio-2706, __ N.E.3d __, at ¶ 52 (Kennedy, J., concurring in judgment only).

{¶ 31} Here, the majority finds that Beem engaged in a single offense of the unauthorized practice of law by

(1) preparing and filing documentation in support of her own affidavit in McCoy's case against the prosecutor, (2) preparing and filing a motion seeking authorization for McCoy to participate, by videoconference from prison, in depositions conducted in that case, (3) providing legal advice and counsel to McCoy regarding his alleged right to be present at depositions in that case, which legal arguments he should make and when he should make them, and which evidence he should submit to the court, and (4) providing legal advice and counsel to McCoy's family after the court struck her motion to permit videoconferencing of their depositions.

Majority opinion at ¶ 21.

{¶ 32} I agree that the conduct set out in the third finding above required the exercise of professional judgment and thereby constitutes the unauthorized

practice of law, but I disagree that the conduct in the first, second, and fourth findings constitutes the unauthorized practice of law.

*Beem exercised professional judgment in counseling McCoy regarding the timing of the filing of the motion to disqualify*

{¶ 33} In a series of emails in July 2014, Beem engaged in discussions with McCoy about having the trial-court judge assigned to McCoy's case disqualified for an alleged conflict of interest. While Beem began by providing McCoy with general information regarding affidavits of disqualification and, at McCoy's request, outlined arguments to support disqualification, she crossed the line when she counseled McCoy regarding the timing of the filing of the motion to disqualify.

{¶ 34} McCoy informed Beem that he had the affidavit written and that he would send it around August 12th or 14th. Beem replied, "You might want to send it a little earlier than that. It has to arrive at the Supreme Court no later than the 13th—it has to be there at least 7 days before the hearing to dismiss or he can rule on it. It won't hurt to send it a little earlier." In another email later that day, she continued to stress the importance of the timing of the filing: "They have to receive it a minimum of 7 days before the August 20th hearing. The purpose is to give them at least a week to rule before the hearing." McCoy replied, "Well? I guess, I'll prepare it and if he doesn't rule on it by this [F]riday I'll send it in. How about that?"

{¶ 35} In counseling McCoy to send the affidavit sooner than the date he had decided on, Beem exercised professional judgment because she appreciated certain "legal problems and consequences involved in" McCoy's action and "the factors which should influence [a] necessary decision," *Mazzacaro*, 465 Pa. at 553, 351 A.2d 229. She was no longer providing elementary knowledge of the law—general timing information. Rather, she took this knowledge and applied it to McCoy's particular situation, setting forth—in her view—the optimal scenario

in which the affidavit could be considered. Her legal advice and counsel resulted in McCoy's changing course as to when he would send in the affidavit for filing. In other words, she was not a layperson using her "knowledge of the law for informational purposes alone," *Baker*, 492 N.W.2d at 701; rather, she used her knowledge of the law to provide a course of action to McCoy to address his specific legal issue of judicial disqualification. This is the exercise of professional judgment.

*Beem's remaining conduct did not involve the exercise of professional judgment*

{¶ 36} With respect to the documentation in support of her affidavit, Beem testified that McCoy was unable to file the supporting documents, which were on a flash drive, because he was incarcerated. However, she stated that McCoy knew the substance of the documents, that Beem was filing them in support of the affidavit he had requested, and that he wanted them filed.

{¶ 37} Beem's affidavit was her statement of facts, and the documents were filed to support her statement. There is nothing about this that involves the exercise of professional legal judgment. It is only when someone combines the facts contained in the affidavit and the supporting documents with an advanced understanding of the law to present arguments as to legal rights or responsibilities that professional legal judgment is exercised.

{¶ 38} Further, to conclude that Beem provided a legal service by preparing and filing documentation that McCoy knew and approved of guts the public policies supporting the prohibition of the unauthorized practice of law. The majority is not protecting the public from "incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation," *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6056, 818 N.E.2d 1181, ¶ 40. Rather, the majority is simply making it difficult for an incarcerated person to pursue a claim. McCoy requested the affidavit and

agreed to the filing of the supporting documentation. But for his incarceration, he would have been able to file the documents himself.

{¶ 39} Turning to the motion to permit McCoy to be present by videoconferencing for the depositions, Beem testified that McCoy informed her that he was going to write the motion but then subsequently realized that the only way for it to be filed on time was for Beem to type and file it. She stated that McCoy emailed her the information needed for the motion and that she then typed the motion and "cleaned up grammar." Therefore, Beem's involvement in the preparation of the motion did not require an advanced understanding and application of legal principles. She merely provided clerical assistance that required nothing more than ordinary intelligence. *See Gustafson v. V.C. Taylor & Sons*, 138 Ohio St. 392, 397, 35 N.E.2d 435 (1941) (supplying "simple, factual material * * * requires ordinary intelligence rather than the skill peculiar to one trained and experienced in the law").

{¶ 40} Turning to Beem's interaction with McCoy's family, Beem testified that McCoy asked her whether she would go to the depositions and calm his mother and sister. She characterized her purpose as "[m]oral support." Beem stated that she had "no knowledge of how to tell them to behave" and that "[t]he only thing I told them was to tell the truth, to be sure they told the truth." She further testified that besides telling McCoy's mother to be truthful, she said to her, "I can't tell you. I can't give you any advice. I don't know what they're doing. I wouldn't give you advice anyway." She also stated that at the request of McCoy's mother, Beem asked the prosecutor for a delay of the depositions.

{¶ 41} Beem's conduct with McCoy's family members does not amount to the unauthorized practice of law. Encouraging a person to testify truthfully at a deposition is very simple guidance. Similarly, it is a common, everyday occurrence to request that a matter be rescheduled if someone does not want to, or cannot, proceed at the appointed time. And these requests are often made on

behalf of others. The mere fact that a legal matter was involved does not somehow morph Beem's conduct into the exercise of professional judgment. Instead, telling the truth and rescheduling a matter remain common everyday issues that do not require even elementary knowledge of the law.

*Beem should be permanently enjoined, but a civil penalty is not warranted*

{¶ 42} Finally, while I also would permanently enjoin Beem from engaging in further acts constituting the unauthorized practice of law in Ohio, I would not impose a civil fine in this matter. Beem engaged in a single instance of the unauthorized practice of law, and her conduct in so doing was not a particularly egregious act. There is no evidence that she received compensation for providing advice and counsel or that McCoy suffered any harm from her assistance. In similar situations, we have declined to impose a civil fine. *See Toledo Bar Assn. v. VanLandingham*, 143 Ohio St.3d 328, 2015-Ohio-1622, 37 N.E.3d 1195, ¶ 8 (no civil penalty imposed on a respondent who engaged in a single instance of the unauthorized practice of law and who did not benefit from his actions or appear to have caused any harm to a third party); *Ohio State Bar Assn. v. Jackim*, 121 Ohio St.3d 33, 2009-Ohio-309, 901 N.E.2d 792, ¶ 11 (a respondent's single infraction of the unauthorized practice of law did not warrant imposition of civil fine when he had not charged for his service or otherwise caused financial harm to anyone).

{¶ 43} Therefore, I concur in part and dissent in part.

––––––––––––––––––

Henderson, Mokhtari & Weatherly Co., L.P.A., and Alvand A. Mokhtari; and J. Desiree Blankenship, Bar Counsel, for relator.

Kimberly R. Beem, pro se.

––––––––––––––––––