Bellecourt et al., Appellees, *v.* City of Cleveland, Appellant, et al.

[Cite as *Bellecourt v. Cleveland,* 104 Ohio St.3d 439, 2004-Ohio-6551.]

(No. 2003–1202—Submitted May 26, 2004—Decided December 15, 2004.)

O'Connor, J.

{¶ 1} April 10, 1998, opening day for the Cleveland Indians baseball team, was a blustery day in downtown Cleveland. Among the onlookers near Jacobs Field, the Indians' ballpark, were throngs of cheering fans as well as groups of spirited protestors. The protestors, including appellees Vernon Bellecourt, Juan Reyna, James Watson, Charlene Teters, and Zizwe Tchiquka, perceived the team's moniker and Chief Wahoo logo as disparaging to Native American culture.[1]

{¶ 2} Following animated yet peaceful speeches and marches, the protestors entered a cordoned area near Jacobs Field. In the presence of several safety personnel, the protestors doused a newspaper-stuffed effigy of Chief Wahoo with lighter fluid and set it afire. As the fire struggled to spread, Bellecourt sprayed additional lighter fluid on the effigy. The fire then quickly accelerated, and within seconds the effigy disintegrated, sending burning remnants to the sidewalk. Cleveland police extinguished what remained of the fire and arrested Bellecourt, Tchiquka, and Reyna. Shortly thereafter, Watson and Teters ignited an accelerant-soaked effigy of Little Black Sambo—apparently as an emblematic condemnation of the use of racially offensive symbols. Police then arrested Watson and Teters. Though appellant, the city of Cleveland, booked appellees on charges of aggravated arson and detained appellees overnight, the city did not prosecute appellees for violating any law.

{¶ 3} Pursuant to Section 1983, Title 42, U.S.Code, appellees sued the city, the arresting officers and their commander, David Regetz, and Chief of Police Rocco

---

1. The Chief Wahoo logo is a red-faced, hooked-nosed, grinning caricature of a Native American.

Pollutro for civil-rights violations stemming from their allegedly baseless arrest and detention. Upon motions for summary judgment, the trial court dismissed the claims against the arresting officers and their commander. The claims against the city and Chief Pollutro were submitted to a jury. In defense, Cleveland and Pollutro argued that police arrested appellees not for burning the effigies, per se, but for burning the effigies in a manner that threatened public safety. Following the presentation of evidence, the court directed a verdict in favor of Cleveland and Pollutro. The appellate court affirmed the judgment in favor of Pollutro and reversed the judgment in favor of Cleveland. The court resolved the claims against the arresting officers and their commander on procedural grounds that have not been presented for our review. This cause is now before us pursuant to our acceptance of Cleveland's discretionary appeal.

{¶ 4} Our ultimate inquiry is whether Cleveland is liable to appellees pursuant to Section 1983, Title 42, U.S.Code, for violating their constitutional right to free speech. Such liability will attach to a municipality only if the municipality itself has inflicted a constitutionally significant injury by executing a policy or custom. *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611. Because a violation of a constitutional right is prerequisite to a Section 1983 violation, our threshold inquiry is whether Cleveland violated appellees' constitutional right to free speech. See *Flagg Bros., Inc. v. Brooks* (1978), 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185. If so, we would then proceed to resolve whether a Cleveland policy or custom was the " 'moving force [behind] the constitutional violation.' " *Canton v. Harris* (1989), 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412, quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018, 56 L.Ed.2d 611.

{¶ 5} Without question, the effigy burnings were constitutionally protected speech. See *Texas v. Johnson* (1989), 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342. Moreover, appellees concede, and we agree, that extinguishment of the waning flames after the effigies had disintegrated does not raise an issue of constitutional significance because by that time, the protected speech had concluded. Appellees urge, however, that the right to free speech is hollow if it is exercised at the expense of arrest. Though we generally agree with this proposition, we find it inapplicable here because any suppression of speech was incidental to Cleveland's important interest in preventing harm caused by fire. See id., 491 U.S. at 407, 109 S.Ct. 2533, 105 L.Ed.2d 342.

{¶ 6} When speech and nonspeech elements are part of the same course of conduct, "a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien* (1968), 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672. A regulation is sufficiently justified "if it is within the constitutional power of the

Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Id. at 377, 88 S.Ct. 1673, 20 L.Ed.2d 672.

{¶ 7} The threshold issue to *O'Brien*'s test is whether a governmental interest asserted by Cleveland is implicated on the facts before us. See *Texas v. Johnson*, 491 U.S. at 407, 109 S.Ct. 2533, 105 L.Ed.2d 342. If the city has not asserted a pertinent interest, then we cannot apply *O'Brien*'s test, and the city will have failed to justify its infringement upon appellees' right to free speech. See id.

{¶ 8} In *Johnson*, Texas claimed, in part, that its interest in preventing breaches of the peace justified arresting Johnson for burning an American flag. The Supreme Court held that this interest was insufficient because "no disturbance of the peace actually occurred or threatened to occur because of Johnson's burning of the flag." Id., 491 U.S. at 408, 109 S.Ct. 2533, 105 L.Ed.2d 342. Moreover, there was no indication that Johnson's provocative speech was intended to incite or likely to incite lawless conduct. Id. at 409, 109 S.Ct. 2533, 105 L.Ed.2d 342, citing *Brandenburg v. Ohio* (1969), 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430. In sum, Johnson was arrested for exercising a constitutional right, not for conduct that threatened the state's interest in maintaining order.

{¶ 9} As in *Johnson*, the conduct in question here involved expression via the burning of a symbol. Unlike in *Johnson*, however, the facts here indicate that Cleveland's asserted interest in preserving public safety was implicated. In the judgment of Cleveland's police officers, the windy conditions coupled with the spraying of additional accelerant on the already burning effigies created a hazard that was their responsibility to remedy. Though appellees emphasize that they set the fire in a cordoned area devoid of flammable property, the police were obligated to protect the public, including the protestors themselves. A video of the effigy burnings and arrests is part of our record. It shows a protestor spraying accelerant on a burning effigy and then retreating from the rapidly growing fire before burning pieces of the disintegrating effigy began floating in the wind and landing in the proximity of the protestors. These facts implicate Cleveland's asserted interest in public safety.

{¶ 10} Having determined that a governmental interest was implicated on the facts before us, we now apply *O'Brien*'s test to determine whether that interest justified an infringement upon appellees' freedom of speech. The parties do not dispute, nor do we question, that safety regulations are within Cleveland's constitutional powers or that such regulation furthers an important or substantial government interest that is generally unrelated to the suppression of free expression. Therefore, the first three prongs of *O'Brien*'s test are satisfied.

{¶ 11} Appellees assert, however, that their arrests were not essential to further Cleveland's safety interest. In support of their position, appellees argue that prior to arrest, police should have warned them of dangers inherent to burning effigies or that the burnings would result in their arrests. In effect, appellees argue that the city erred by forgoing the lesser restriction of warnings in favor of the greater restriction of arrests.

{¶ 12} The success of appellees' argument depends on the applicability of strict scrutiny, the highest level of constitutional analysis. Here, however, our analysis is based on *O'Brien*'s relatively lenient standard that "is little, if any, different from the standard applied to time, place, or manner restrictions." *Clark v. Community for Creative Non–Violence* (1984), 468 U.S. 288, 298, 104 S.Ct. 3065, 82 L.Ed.2d 221. In *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661, the Supreme Court rejected the "less restrictive means" argument as inapplicable to *O'Brien*'s test. Quoting *Clark* at 299, 104 S.Ct. 3065, 82 L.Ed.2d 221, the *Ward* court stated, " 'We do not believe * * * that either *United States v. O'Brien* or the time, place, or manner decisions assign to the judiciary the authority to replace the [United States Park Service] as the manager of the [Nation's] parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained.' " Id., 491 U.S. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661. Though the *Ward* court spoke specifically to the regulation of parks, the unmistakable message is that under *O'Brien*'s standard, courts are not arbiters of whether a less restrictive means exists to effectuate an asserted governmental interest. The *Ward* court continued, "Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so. * * * [T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id., 491 U.S. at 798–800, 109 S.Ct. 2746, 105 L.Ed.2d 661. Thus, appellees' "less restrictive means" argument is without merit.

{¶ 13} Further, appellees' argument presumes that warnings would have obviated a fire hazard or that they were arrested merely for burning effigies. To be sure, the police knew that protestors intended to burn effigies. There is no indication, however, that the police had prior knowledge of the dangerous manner in which the effigies were to be burned, and it would be utterly impractical to require police to be so prescient as to issue appropriate warnings. Moreover, the record demonstrates that Cleveland arrested appellees not because they burned effigies, but because of a perceived public safety threat in the manner in which they burned the effigies. Under the facts before us, we determine that the

arrests were narrowly tailored to Cleveland's asserted interest in preserving public safety. Therefore, the fourth prong of *O'Brien*'s test is satisfied, and any incidental limitation on appellees' First Amendment freedoms was justified. Accordingly, Cleveland is not liable to appellees pursuant to Section 1983, Title 42, U.S.Code.

Judgment reversed.

RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

O'DONNELL, J., concurs in judgment only.

MOYER, C.J., dissents.

PFEIFER, J., dissents.

---

**MOYER, C.J., dissenting.**

{¶ 14} Appellees were arrested for violating R.C. 2909.02, which provides:

{¶ 15} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:

{¶ 16} "(1) Create a substantial risk of serious physical harm to any person other than the offender;

{¶ 17} "(2) Cause physical harm to any occupied structure."

{¶ 18} In order for appellees to succeed in this Section 1983 claim, they must prove that their arrests violated their right to free speech and that a policy of the city caused the violations. *Canton v. Harris* (1989), 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412.

{¶ 19} The majority concludes that the facts implicate the city's interest in public safety, placing significance on the fact that pieces of the burned effigy "land[ed] in the proximity of the protesters." However, because the protesters were charged with violating R.C. 2909.02, the city's sole interest in this particular case was to protect "any person other than the offender" or "any occupied structure." The effigies were burned outdoors in a paved area cordoned off by metal barricades, and firefighters with extinguishers were nearby. The most one can conclude is that appellees placed themselves at "a substantial risk of serious physical harm." Even though one might be concerned with the potential danger of burning effigies, there is no evidence that anyone other than the protesters were placed in any risk of serious physical harm resulting from appellees' conduct. Therefore, the city had no authority to arrest appellees based on R.C. 2909.02, and the arrests interfered with their freedom of expression guaranteed by the First Amendment.

{¶ 20} In support of their contention that a policy of the city caused the constitutional violations, appellees assert that the city failed to adequately train its police officers how to respond to protesters who burn effigies. Under the "failure to train" theory, a city can be held liable for a violation of constitutional rights by one of its police officers, pursuant to Section 1983, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388, 109 S.Ct. 1197, 103 L.Ed.2d 412. Deliberate indifference may be shown where the need for more or different training is obvious and where "the inadequacy [is] likely to result in the violation of constitutional rights." Id. at 390, 109 S.Ct. 1197, 103 L.Ed.2d 412.

{¶ 21} At trial, appellees offered evidence that they previously had been arrested for burning effigies at Jacobs Field. Appellees also elicited testimony from Cleveland police and fire department personnel that the city had not conducted special training on the constitutional implications of responding to symbolic burnings. Appellees have presented evidence upon which a reasonable jury could determine that the city was deliberately indifferent to individuals' constitutional rights. Accordingly, I believe that the court of appeals properly reversed the judgment of the trial court and remanded the cause for determination whether a policy of the city caused the constitutional violation.

---

**PFEIFER, J.,** dissenting.

{¶ 22} As the majority relates, ceremonial burning is protected speech in this country. But every state has prohibitions against arson. To allow arson laws to be applied to small-scale, outdoor ceremonial burnings like the one in this case defeats the free-speech protections accorded those activities.

{¶ 23} Appellees were arrested for a violation of R.C. 2909.02, which provides:

{¶ 24} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:

{¶ 25} "(1) Create a substantial risk of serious physical harm to any person other than the offender."

{¶ 26} If there was any risk here, it was not substantial. The burnings took place in a paved area cordoned off by metal barricades with firefighters with extinguishers nearby. Moreover, the record shows that burning pieces of the effigy landed near the protestors themselves, not anyone else. I agree with the appellate court that the facts of this case do not implicate the city's asserted interest in public safety. Thus, the city lacked "a sufficiently important governmental interest in regulating the nonspeech element" to justify the incidental

limitation on appellees' First Amendment freedoms. *United States v. O'Brien* (1968), 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672.

{¶ 27} If we allow flag burning in this country, we should certainly allow Chief Wahoo effigy burning. Our flag stands for over 200 years of freedom and unity; Chief Wahoo stands for 56 years (and counting) of baseball futility.

———————

Terry H. Gilbert, for appellees.

Subodh Chandra, Cleveland Director of Law, Thomas J. Kaiser, Chief Trial Counsel, and Joseph G. Hajjar, Assistant Director of Law, for appellant.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Elise Porter, Assistant Solicitor, urging reversal for amicus curiae, Ohio Attorney General.