**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Lorain Cty. Bar Assn. v. Zubaidah,* **Slip Opinion No. 2014-Ohio-4060.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4060

LORAIN COUNTY BAR ASSOCIATION *v.* ZUBAIDAH ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Zubaidah,* Slip Opinion No. 2014-Ohio-4060.]**

*Unauthorized practice of law—Providing legal advice to and advocating on behalf of criminal defendants—Injunction issued and civil penalty imposed.*

(No. 2013-0072—Submitted May 8, 2013—Decided September 25, 2014.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 11-01.

_____

**Per Curiam**.

**{¶ 1}** On March 25, 2011, relator, the Lorain County Bar Association, filed a four-count complaint with the Board on the Unauthorized Practice of Law against respondents, King Ayettey Zubaidah (f.k.a. Gerald McGee) and his Ohio corporation, STAND Inc. The complaint alleged that Zubaidah, who is not licensed to practice law in Ohio, provided legal advice and services to four

defendants during their criminal proceedings. Zubaidah answered the complaint, admitting to a number of the facts asserted but denying the allegations of the unauthorized practice of law. A panel of the board was appointed to hear the case.

{¶ 2} After relator moved to withdraw a joint motion to approve a consent decree because Zubaidah's signature on the proposed decree was invalid, the matter proceeded to a hearing on May 15, 2012. Upon consideration of the testimony of ten witnesses and dozens of exhibits, the panel submitted a report concluding that Zubaidah had engaged in the unauthorized practice of law in each of the four alleged counts.

{¶ 3} The panel recommended a civil penalty of $5,000 for each count, totaling $20,000, to be imposed jointly and severally against Zubaidah and STAND. The panel also recommended enjoining Zubaidah and STAND from further engaging in the unauthorized practice of law and assessing respondents for the costs and expenses incurred by the board and bar association. The board adopted the panel's findings of fact, conclusions of law, and recommended penalty.

{¶ 4} Zubaidah filed objections to the board's report with this court, generally asserting that the board's decision was not factually supported. For the reasons stated below, we overrule Zubaidah's objections, and we agree with the board's findings and recommendations. We accordingly enjoin Zubaidah and STAND Inc. from engaging in the unauthorized practice of law, we assess costs, and we order Zubaidah and STAND, jointly and severally, to pay a $20,000 civil penalty.

**Background**

{¶ 5} In 1986, the Lorain County Court of Common Pleas convicted Zubaidah of a single count of aggravated trafficking in drugs, imposed a suspended prison sentence of one and a half years, and ordered Zubaidah to serve

five years of probation. Zubaidah was the president of STAND Inc. (Striving Towards a New Day!), a corporation he formed in 2008 inspired by his own experience with the justice system and his research into judicial cases. A stated mission of STAND was "to help change the unfair and partial treatment against minorities in the judicial system."

{¶ 6} Zubaidah had originally wanted funding for STAND to be able to subsidize legal representation for criminal defendants, but he later abandoned his plan of applying for grants or other funding for legal services. He sought to further STAND's mission by providing his personal assistance to individuals in his community facing criminal charges. Zubaidah is not admitted to the practice of law in Ohio, has not received any legal training, and does not have a college degree.

{¶ 7} Recipients of Zubaidah's assistance become STAND "members" after signing a "General Letter of Introduction," which is a one-page agreement providing that "STAND Inc. will be assisting" the member. No payment is required to be a STAND member. In each of the four matters giving rise to the counts against respondents, the parent of a criminal defendant or the defendant himself requested assistance from Zubaidah during the pendency of the defendant's proceedings and signed the STAND agreement. All family members who testified regarding the four matters stated that Zubaidah had never claimed to be an attorney, and they were aware that Zubaidah was not an attorney.

**The Calhoun Matter**

{¶ 8} In September 2008, Dennis Calhoun was arrested and charged with two counts of rape and two counts of gross sexual imposition involving a minor under the age of 13. Attorney David Nehr represented Calhoun. Calhoun's mother, Terri Blackburn, signed a STAND membership agreement with Zubaidah after she became dissatisfied with Nehr's representation. Nehr presented a plea offer to Calhoun and advised him to accept it, but after Calhoun insisted on

consulting with his family and other individuals, including Zubaidah, Calhoun rebuffed the plea offer and the case proceeded to trial. After a bench trial in July 2009, Calhoun was found guilty on all four counts. He was ultimately given a prison sentence of 15 years to life and classified as a Tier III sex offender.

{¶ 9} In July 2009, before Calhoun was sentenced, Zubaidah sent a letter to Nehr informing him that Calhoun was "being assisted" by STAND and attaching a copy of the STAND membership agreement signed by Blackburn. Zubaidah alleged that Nehr had been verbally abusive to Blackburn, driving her "to seek other assistance for her son's freedom," and that Nehr had emotionally manipulated Calhoun's family by approaching Calhoun with a plea deal in 2009 after allegedly stating in 2008 that the prosecution did not have evidence to support a conviction. A few days later, Zubaidah sent a second letter accusing Nehr of making insulting statements to Blackburn and of failing to protect Calhoun's interests. Zubaidah provided copies of these letters to the Office of Disciplinary Counsel and the judge presiding over Calhoun's proceedings.

{¶ 10} Nehr testified that he believed that Zubaidah's involvement with Calhoun had a significant negative impact on the case, because Calhoun was more willing to listen to Zubaidah than to Nehr and rejected any legal advice that Nehr provided subsequent to Zubaidah's involvement. Nehr also testified that in August 2009, he witnessed Zubaidah enter a courthouse holding cell, access to which was restricted to attorneys and court personnel, and proceed to speak with two defendants. In September 2009, Nehr witnessed Zubaidah talking with another of Nehr's clients in a courtroom hallway. Nehr learned from his client that Zubaidah had approached the client to discuss current and prior criminal proceedings and that Zubaidah had advised the client of what he could do through the legal appellate process to remove prior convictions.

{¶ 11} Nehr conceded that he never heard Zubaidah claim to be an attorney or otherwise held himself out as an attorney. However, Zubaidah's

"constant presence at court speaking to clients and advising them contrary to their attorney's advice" led Nehr to believe that Zubaidah was practicing law.

**The White Matter**

**{¶ 12}** In December 2008, Eric White was charged with two counts of felonious assault and accompanying firearm specifications. Judge James Miraldi presided over the case and initially appointed James Dorman to represent White. In February 2009, after Dorman withdrew from representation due to disagreements regarding legal strategy, Judge Miraldi appointed J. Anthony Rich to represent White. White's mother, Gail White, signed a STAND membership agreement with Zubaidah, with the intent that Zubaidah would attend proceedings and provide support for White at times when Gail was unable to travel from her residence in Virginia.

**{¶ 13}** In July 2009, Zubaidah accompanied Gail to a meeting with Rich, during which Gail urged the pursuit of legal strategies that Rich perceived as involving perjury and bribery. Although Zubaidah did not personally participate in that discussion, Zubaidah's repeated interventions and White's actions from that point on led Rich to believe that Zubaidah was providing legal advice to White and his family. Subsequent to Zubaidah's involvement, White began to ask legal questions and request actions that were not relevant to his defense. White no longer gave credence to Rich's advice.

**{¶ 14}** Zubaidah then began to directly interject himself into White's proceedings. In September 2009, Zubaidah sent a letter to Judge Miraldi, asking the judge to lower the amount of White's bond. Zubaidah cited the case of another criminal defendant whose bond had been set at a lower amount and argued that the judge should lower White's bond to the same amount because of the circumstances of White's case. Zubaidah qualified his arguments by explaining that "Stand Inc. does not act as a lawyer," but he also explained that the aim of his organization was to provide case comparisons and argue against the

unfair treatment of individual defendants appearing before the court. The court forwarded Zubaidah's letter to Rich and gave Rich the opportunity to present a formal request for a bond reduction, which was then denied in October 2009.

{¶ 15} In December 2009, Zubaidah sent a letter to Rich, accusing him of failing to provide ethical and competent representation to White, citing multiple criminal cases in which the defendants' bonds were set at a lower amount than White's bond, and urging Rich to seek similar treatment for White. Rich withdrew as counsel shortly thereafter due to Zubaidah's interference with the case.

{¶ 16} After a third attorney was appointed to White's case, Zubaidah continued his attempts to advocate for White by sending another letter to Judge Miraldi in January 2010. In it, Zubaidah again explained that he was not an attorney and that he believed it was not the practice of law to provide case comparisons and state what he "might have done differently." The stated purpose of the letter was to express concern regarding White's case "on his behalf" and to advocate for a reduced bond. Zubaidah again cited the case of another criminal defendant and argued that White's bond should be lowered to a similar level. Zubaidah concluded the letter by stating that White would be appearing before the judge in February 2010 and asking Judge Miraldi to reduce White's bond at that time. In March 2010, White pleaded guilty to a reduced charge of one count of felonious assault.

{¶ 17} Both Zubaidah and Gail White testified that Zubaidah was a friend of the family, that he was not an attorney, and that he was not practicing law. Judge Miraldi testified that although Zubaidah claimed he was not practicing law, Zubaidah's letters comparing different criminal cases and advocating for legal results on behalf of a party appeared to constitute the practice of law. Rich testified that although Zubaidah had always claimed not to be an attorney, Zubaidah's advice to White and ex parte letter to Judge Miraldi led Rich to

believe that Zubaidah was practicing law. Based on Zubaidah's citations of inapposite case law and advice regarding irrelevant legal strategies, Rich believed that Zubaidah's involvement was detrimental to the defendant.

**The Harris Matter**

{¶ 18} In 2008, Isaiah Harris faced a number of charges in three separate cases, all involving the same victim. In May 2008, he was charged with felonious assault and domestic violence. In September 2008, he was charged with domestic violence and violation of a protection order. And in December 2008, he was charged with domestic violence, violation of a protection order, intimidation, kidnapping, rape, and two counts of aggravated burglary. Judge Christopher Rothgery presided over the cases and appointed J. Anthony Rich to represent Harris in all three. Harris personally signed a STAND membership agreement with Zubaidah.

{¶ 19} In February 2009, the court consolidated the three cases pursuant to Harris's request but over Rich's objection. By March 2009, Rich had become extremely concerned with Harris's defiance to his legal advice and certain instances of Harris's behavior that threatened to undermine his own defense. For example, Harris confessed to many of the charged crimes during recorded phone calls to the victim from jail, yet refused to enter a guilty plea to any charges, turning down a favorable plea deal for a three-year prison term that had been offered by the prosecution.

{¶ 20} Harris's consolidated cases were scheduled for a bench trial in May 2009. Two weeks prior to trial, Zubaidah sent a letter to Judge Rothgery, attaching Harris's agreement to allow STAND to "support * * * his involvement with the judicial system." Zubaidah indicated that he had in-depth knowledge about the facts of Harris's case; he defended Harris's actions by explaining that they were born of "intoxicated love emotions" and arguing that Harris was "only guilty of loving [the victim] too much." Zubaidah asserted that "[r]egardless of

his extreme love for [the victim] he wouldn't force her to have sex with him or be a burglar where his three children resided."

{¶ 21} At Harris's trial, the prosecution played the recordings of Harris explicitly confessing to many of the crimes that he was contesting he committed. Judge Rothgery called a recess and suggested that Rich and Harris regroup in order to repair what appeared to be a breakdown in communication over trial strategy. Rich negotiated with the prosecution for a plea deal for four years in prison, and the judge indicated a willingness to assent to such a deal. Harris again refused to enter a plea and insisted on continuing with the trial. Harris was ultimately convicted of rape, intimidation, three counts of domestic violence, two counts of violating a protection order, and two counts of aggravated burglary, and was sentenced to 23 years and 6 months in prison.

{¶ 22} Zubaidah was in attendance throughout Harris's trial, though testimony conflicted as to Zubaidah's level of participation. Zubaidah and Harris's father testified that Zubaidah did not speak at any point during the trial. Rich testified that during the recess, Zubaidah spoke to Harris in Rich's presence and explicitly advised Harris not to accept the four-year plea deal, contrary to Rich's advice.

{¶ 23} Both Zubaidah and Harris's father testified that Zubaidah was a friend of the family, not an attorney, and was not practicing law. They maintained that Zubaidah's letter to Judge Rothgery was a typical layperson's character reference, seeking to mitigate a defendant's punishment. Judge Rothgery testified that Zubaidah's letter exceeded the boundaries of a mere character letter when it began to assert Harris's lack of guilt based on the specific facts underlying the charges. Upon considering the character letter together with Zubaidah's letter of introduction portraying himself and STAND as representatives of Harris in his legal proceedings, Judge Rothgery believed that the letter constituted legal advocacy. As in the White case, Rich testified that

despite Zubaidah's claims that he is not an attorney, Zubaidah's advice to Harris and ex parte letter to Judge Rothgery led Rich to believe that Zubaidah was practicing law. Rich believed that the much longer prison sentence Harris received after rejecting plea offers made Zubaidah's detriment to Harris's case very clear.

**The Bason Matter**

{¶ 24} In 2010, Corey Bason was charged with rape and gross sexual imposition of a minor under the age of 13. Bason's mother, Dalphene Bason, signed a STAND membership agreement with Zubaidah. Judge James Miraldi presided over the case. Attorney J. Anthony Rich was appointed to represent Bason but moved to withdraw from that representation before October 2010, supposedly due to complications arising from Zubaidah's interference with the case.

{¶ 25} In November 2010, Zubaidah sent a letter to Judge Miraldi, stating that he was "petitioning the court on behalf of" Bason and asking the judge to reduce Bason's bond. Zubaidah compared Bason's case with that of another criminal defendant's in which bond had been set at a lower amount and argued that the failure to lower Bason's bond constituted a violation of Bason's due-process rights. Zubaidah accused Judge Miraldi of violating the Code of Judicial Conduct and indicated that he was sending a copy of his letter to the Ohio State Bar Association.

{¶ 26} Both Zubaidah and Bason's mother testified that Zubaidah was a friend of the family, that he was not an attorney, and that he was not practicing law. Judge Miraldi testified that Zubaidah's letter, which provided case comparisons and legal arguments on behalf of a particular defendant, appeared to constitute the practice of law.

**Other Developments**

{¶ 27} In December 2009, the bar association sent a letter to Zubaidah, informing him that multiple attorneys had reported Zubaidah's conduct. The bar association explained that advising people in pending criminal cases constitutes the unauthorized practice of law. The letter demanded that Zubaidah immediately cease and desist from such prohibited conduct or face civil penalties up to $10,000 for each offense. Zubaidah sent a response stating that he was not an attorney and did not practice law. Zubaidah stated that he would ignore the letter unless the bar association provided the names of all attorneys who had alleged misconduct.

{¶ 28} In July 2010, prior to initiating a formal action against Zubaidah, the bar association offered to negotiate a resolution with Zubaidah. Although Zubaidah agreed to meet for negotiations, no agreement was reached.

{¶ 29} While formal proceedings were pending before the board, Zubaidah and the bar association conducted a settlement conference in April 2012 in order to negotiate a consent-to-judgment decree. Zubaidah stated on the record during the settlement hearing that he accepted the terms of the decree and that he had signed it of his own free will. However, the decree itself bore the signature "King A. Zubaidah (under duress)." The bar association moved to withdraw the joint motion, stating that it could be reasonably inferred that the decree was not executed voluntarily, and served Zubaidah with a notice of deposition.

{¶ 30} Zubaidah refused to attend his scheduled deposition, communicating through his counsel that he wanted to assert his Fifth Amendment right not to testify due to fear of criminal prosecution. Upon the board's entry allowing withdrawal of the consent decree, the matter proceeded to a hearing, which Zubaidah attended pursuant to a subpoena.

{¶ 31} At the beginning of the hearing, Zubaidah accused the panel of subjecting him to double jeopardy, and he refused to testify during the bar

association's case in chief, stating that he was asserting his Fifth Amendment right not to testify. However, during Zubaidah's case in chief, he elected to waive his prior invocation of the Fifth Amendment and testified before the board.

**The Board's Recommendation**

**{¶ 32}** Upon consideration of the totality of the circumstances presented in the record, the board concluded by a preponderance of the evidence that Zubaidah and STAND had engaged in the unauthorized practice of law in each of the four counts alleged in the complaint. Specifically, the board concluded that respondents engaged in the unauthorized practice of law by contracting with several criminal defendants or their families to assist the defendants in the legal process, providing legal advice to those defendants, indicating special knowledge of the law and ability to develop legal positions and strategies, indicating special knowledge of the judicial system and ability to navigate the defendants through it, sending letters to judges advocating for bond reductions or other results on behalf of the defendants, and drafting letters of advocacy to judges and attorneys that included citations of comparable cases and allegations of violations of the defendants' constitutional rights.

**{¶ 33}** The board emphasized that many activities similar to portions of Zubaidah's conduct do not necessarily constitute the unauthorized practice of law. For example, challenging the judicial system as a community activist, sending a true character reference letter to a court for purposes of a bond or sentencing decision, or providing nonlegal advice as a friend or relative to a defendant are all appropriate actions that do not individually constitute the unauthorized practice of law and should not be stifled.

**{¶ 34}** However, the board found that Zubaidah crossed a line into the unauthorized practice of law, as shown by the formal agreements signed by the STAND members that were provided to judges and legal counsel. Given the context in which Zubaidah used these agreements, the board agreed that Zubaidah

was holding himself out to his "clients" as having expertise on legal matters and trial strategy and holding himself out to attorneys and judges as having a contracted right to advocate on behalf of criminal defendants. This, in addition to evidence of Zubaidah's presentation of legal arguments and advocacy to presiding judges and the giving of legal advice to defendants, supported the conclusion that respondents' participation in each of the four defendants' cases far exceeded the bounds of acceptable layperson involvement.

{¶ 35} In light of the foregoing findings, the flagrancy of Zubaidah's conduct, the significant harm to the defendants' interests, and Zubaidah's lack of cooperation throughout the bar association's involvement, the board adopted the panel's recommendation of a civil penalty. But after consideration of Zubaidah's sincere and selfless motives in mitigation of his action, the board agreed with the panel's recommendation of a civil penalty of $5,000 for each count rather than the maximum penalty of $10,000 per count.

## Respondent's Position

{¶ 36} Zubaidah objects to the board's report and recommendations regarding both himself and STAND. Because STAND is a separate corporate entity and Zubaidah is not a licensed attorney, he cannot represent STAND as a pro se advocate before this court. *See Union Savs. Assn. v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60, 64, 262 N.E.2d 558 (1970). We therefore consider Zubaidah's arguments only as they relate to him personally.

{¶ 37} Zubaidah's objections, for the most part, present a medley of bald assertions. He appears to address both legal issues and findings of fact, which we address in turn.

## Legal Objections

{¶ 38} Zubaidah asserts that the board's decision is biased and discriminatory and that it raises questions regarding "Zubaidah's First Amendment rights of the Constitution, jurisdiction under color, subject matter,

creditability, prosecutorial misconduct, ineffective assistance of counsel and HARM." Zubaidah has failed to present any arguments or legal authority to support them.

**{¶ 39}** We recognize that Zubaidah has repeatedly asserted that his conduct does not constitute the unauthorized practice of law, because he has a constitutional right to petition the court. However, he does not explain how the First Amendment right to petition the court for redress of grievances might extend to providing legal assistance to another person.

**{¶ 40}** Regardless, we have previously held that placing restrictions on a person's conduct by prohibiting the unauthorized practice of law has only an incidental relationship with free speech and does not implicate that person's First Amendment rights. *Cincinnati Bar Assn. v. Bailey*, 110 Ohio St.3d 223, 2006-Ohio-4360, 852 N.E.2d 1180, ¶ 13, citing *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). An incidental limitation on a First Amendment right might be justified when an important government interest is involved, *see Bellecourt v. Cleveland*, 104 Ohio St.3d 439, 2004-Ohio-6551, 820 N.E.2d 309, ¶ 6, and protecting the public against incompetence in the legal process is such a government interest.

**{¶ 41}** Criminal defendants have the right to appear pro se, but when they rely on someone else's expertise, we have a duty to ensure that they are properly represented. We do so by requiring that anyone providing legal assistance must formally meet stringent standards of character and competency before being permitted to practice law in Ohio. Gov.Bar R. I(1).

**{¶ 42}** Our rules governing the unauthorized practice of law directly refute Zubaidah's claims. Gov.Bar R. VII. He does not develop any argument as to why our rules should be stricken as unconstitutional, and we find no reason to strike those rules.

**Finding of Unauthorized Practice of Law**

{¶ 43} Zubaidah primarily maintains that the facts presented at his hearing do not support the conclusion that he has practiced law. He supports this argument by citing the testimony of attorneys Rich and Nehr that Zubaidah never claimed to be an attorney as well as the STAND members' testimony that Zubaidah was not an attorney and was not practicing law. He additionally cites testimony describing isolated portions of Zubaidah's letter on behalf of Isaiah Harris as a character reference. For the reasons articulated below, we reject Zubaidah's objections.

{¶ 44} The Ohio Constitution provides this court with original jurisdiction over the practice of law, whether authorized or unauthorized. Section 2(B)(1)(g), Article IV, Ohio Constitution; *Geauga Cty. Bar Assn. v. Haig*, 129 Ohio St.3d 601, 2011-Ohio-4271, 955 N.E.2d 352, ¶ 2. A person who is not licensed to practice law in Ohio cannot "[c]ommit any act that is prohibited by the supreme court as being the unauthorized practice of law." R.C. 4705.07(A)(3). The unauthorized practice of law occurs when a person who is not admitted to the Ohio bar or otherwise certified to practice law by the Supreme Court provides legal services to another person in this state. Gov.Bar R. VII(2)(A).

{¶ 45} An unauthorized-practice-of-law allegation not supported by an admission must be supported "by other evidence of the specific act or acts upon which the allegation is based." *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, ¶ 26. We will defer to the panel's determination of the credibility of testimony when "the record does not weigh heavily against the findings of the panel, as adopted by the board." *Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, 933 N.E.2d 1095, ¶ 21. The panel may consider and weigh circumstantial evidence in its determination. *Robinson at* ¶ 21 (despite respondent's claim that he did not intend to conceal documents from an opposing counsel and thus that he had not

acted willfully, the court could infer a willful violation based on evidence that he removed documents from his office and did not reveal that the documents were in his possession).

**{¶ 46}** A person "who purports to negotiate legal claims on behalf of another and advises persons of their legal rights and the terms and conditions of settlement engages in the practice of law." *Cleveland Bar Assn. v. Henley*, 95 Ohio St.3d 91, 92, 766 N.E.2d 130 (2002). Doing so for free is irrelevant. *Geauga Cty. Bar Assn. v. Canfield*, 92 Ohio St.3d 15, 16, 748 N.E.2d 23 (2001).

**{¶ 47}** Disclaimers are likewise ineffective: persons who disclose their nonattorney status are not then free to practice law without authorization. *Cincinnati Bar Assn. v. Telford*, 85 Ohio St.3d 111, 113, 707 N.E.2d 462 (1999); *Henley* at 91. Even good intentions do not override the prohibition against the unauthorized practice of law. *See Disciplinary Counsel v. Bukstein*, 139 Ohio St.3d 230, 2014-Ohio-1884, 11 N.E.3d 237, ¶ 6, 21 (though the respondent assisted litigants free of charge and in the spirit of civil-rights advocacy, her provision of legal advice and presentation of legal arguments on behalf of the litigants nonetheless constituted the unauthorized practice of law). *See also People v. Shell*, 148 P.3d 162, 167 (Colo.2006) (distinguishing "permissible activism" from the unauthorized practice of law when a nonattorney community activist prepared legal documents and gave legal advice to specific clients).

**{¶ 48}** Generally, a person who sends a character-reference letter to a judge on behalf of another person is not engaging in the unauthorized practice of law. Character has been defined as a "generalized description of one's disposition as it relates to a general trait such as honesty, temperance or peacefulness." *State v. Reed*, 110 Ohio App.3d 749, 753, 675 N.E.2d 77 (4th Dist.1996). In the criminal context, information about the defendant's character may assume the form of admissible evidence at trial through character testimony permitted under the Rules of Evidence and also may also serve as evidence, subject to the judge's

discretion, relevant to the defendant's sentencing. *See* Evid.R. 401, 404(A)(1), 405; *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907); R.C. 2929.12. Therefore, pure character letters—those without legal arguments identifying and applying law–are evidentiary by nature and do not constitute the practice of law. However, when letters by nonattorneys cross the line from endorsing a person's character to advocating specific legal positions on behalf of that person, the unauthorized practice of law occurs. *See Henley* (holding that a nonattorney practiced law by writing letters on behalf of his "clients" asking for the resolution and settlement of potential discrimination claims).

{¶ 49} To the extent that a nonparty to litigation might be permitted by a trial or appellate court to present a legal argument, he is limited to furthering his own interests as a nonparty and may not raise issues beyond those already raised by the parties. *See* App.R. 17 (requiring, in addition to consent of the parties or leave of court, that amici curiae identify and advance their own interests related to a particular case); *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53, quoting *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 394, 584 N.E.2d 70 (8th Dist.1990) ("In general, '[a]mici curiae are not parties to an action and may not, therefore, interject issues and claims not raised by the parties' "). And despite the laudable desire to seek reform in the criminal system, such a desire cannot be realized by legally advising and advocating on behalf of a criminal defendant without violating our prohibition against the unauthorized practice of law. *Bukstein* at ¶ 12, 20.

{¶ 50} Here, Zubaidah's actions extended beyond the permissible conduct of endorsing a person's character, advocating a social issue generally, advancing personal interests, or providing nonlegal advice to a family member. Despite Zubaidah's good intentions and intermittent disclaimers, his conduct shows a pattern of advocating legal positions on behalf of defendants and providing legal

16

advice to those defendants, leading to serious consequences for the STAND clients who trusted him.

{¶ 51} Zubaidah held himself out as an advocate with legal expertise to community members, legal professionals, and the judiciary. Zubaidah sought out formal representation relationships with criminal defendants' families and entered into agreements that implied to the signers that he had specialized knowledge of the legal system. Zubaidah repeatedly sent letters to attorneys and to judges on behalf of criminal defendants in pending cases that indicated that STAND would be assisting the defendant and that cited case law, raised legal issues, and asked for legal results.

{¶ 52} Zubaidah also provided legal advice to the criminal defendants involved, as well as to their family members. At least one attorney heard Zubaidah directly give his client legal advice, and the remainder of the defense attorneys who testified believed from their own observations that Zubaidah had given their clients legal advice.

{¶ 53} The board found the attorneys' testimony to be credible, and we defer to this well-supported finding. The legal stances taken by defendants under Zubaidah's counsel, which often directly contradicted the attorneys' recommendations, add strong credibility to the attorneys' belief. Zubaidah's attempt to advocate on behalf of STAND before this court greatly weakens his personal assertions that he has not practiced law at any point; it is clear that he either does not understand or refuses to acknowledge what does and does not constitute the practice of law.

{¶ 54} Zubaidah's conduct strongly invokes the purpose of restricting the practice of law to licensed attorneys: "to protect the public against incompetence [and] divided loyalties * * * often associated with unskilled representation." *CompManagement,* 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40. The competing legal advice from Zubaidah created, or at a minimum exacerbated,

a divide between the defendants and their defense attorneys: the attorney witnesses testified that Zubaidah played a significant role in eroding the client-attorney relationship, in some cases causing them to withdraw as counsel. As noted by attorney Rich, Zubaidah was able to learn information from the criminal defendants that would be considered confidential in an attorney-client relationship but that Zubaidah could be compelled to disclose by subpoena, creating the potential for "catastrophic consequences" in the defendants' criminal proceedings. And Zubaidah's involvement led to actual detrimental consequences for STAND members, most strikingly illustrated by Harris receiving more than 20 additional years of imprisonment by following the legal advice of Zubaidah rather than that of his own defense attorney.

{¶ 55} Given the foregoing, we accept the board's findings that Zubaidah engaged in the unauthorized practice of law.

## Sanction

{¶ 56} We accept the board's recommendation that we issue an injunction prohibiting Zubaidah and STAND from further engaging in the unauthorized practice of law. After considering the factors listed in Gov.Bar R. VII(8)(B) and UPL Reg. 400(F), which include respondent's cooperation in the investigation, the number of occasions that the unauthorized practice of law occurred and the flagrancy of the violation, the harm to third parties, and other relevant factors, we accept the board's recommendation to impose civil penalties as authorized under Gov.Bar R. VII(8)(B).

{¶ 57} (1) The degree of cooperation provided by the respondent in the investigation. Zubaidah impeded the investigation several times: he rejected a cease-and-desist letter from the Lorain County Bar Association; he appeared to agree to a consent decree but then indicated that he was signing the decree "under duress" after his signature; and he refused to appear at a scheduled deposition.

**{¶ 58}** (2) The number of occasions that the unauthorized practice of law was committed. Zubaidah committed multiple acts constituting the unauthorized practice of law in each of the four counts charged in this case.

**{¶ 59}** (3) The flagrancy of the violation. Zubaidah continued with the unauthorized practice of law despite admonitions from attorneys and judges, even after receiving a formal cease-and-desist letter from the bar association. He has been persistently adamant that he has not practiced law.

**{¶ 60}** (4) Harm to third parties arising from the offense. The consequences of the well-intentioned but unauthorized practice of law are vividly demonstrated by the difference between the proposed but rejected plea agreements and the actual sentences for some of the STAND members. The attorneys working on the cases also suffered the deterioration and termination of their relationship with their clients. As aptly indicated in the board's report, Zubaidah's actions both "undermine[d] public confidence in the judicial system" and caused harm "irreparable in nature" for each criminal defendant.

**{¶ 61}** (5) Any other relevant factors. Two additional aggravating factors favor a more severe penalty. First, Zubaidah had previously been ordered to cease engaging in the unauthorized practice of law: he remains under a cease-and-desist order issued by this court on April 29, 2011. *Lorain Cty. Bar Assn. v. Zubaidah*, 128 Ohio St.3d 1469, 2011-Ohio-2052, 946 N.E.2d 229. Second, Zubaidah had been informed that the conduct at issue might constitute an act of unauthorized practice of law. The Lorain County Bar Association demanded as early as December 31, 2009, that respondents stop engaging in the unauthorized practice of law, but Zubaidah denied the allegations made in the bar's letter, found the demand to have "no merit," and continued the same conduct.

**{¶ 62}** One mitigating factor points to a less severe penalty. Zubaidah's conduct resulted from a motive other than dishonesty or personal benefit. Zubaidah did not gain financially from his actions and exhibited a sincere desire

both to help young men in his community and correct perceived inequalities in the legal system.

{¶ 63} Viewing these factors collectively, we believe that the imposition of civil penalties furthers the purposes of Gov.Bar R. VII and that the board's recommended penalty in the amount of $5,000 for each violation, for a total of $20,000, is reasonable. We adopt that recommendation.

{¶ 64} We therefore impose a civil penalty of $20,000 against Zubaidah and STAND Inc. and enjoin both respondents from engaging in the unauthorized practice of law. Zubaidah and STAND Inc. are prohibited from advising any individual involved in a pending legal matter regarding the law or trial strategies, contacting judges presiding over pending legal matters and advocating on behalf of others, and engaging in any other activities that would constitute the unauthorized practice of law. Costs and expenses are taxed to respondents Zubaidah and STAND Inc.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., concur in part and dissent in part and would impose a civil penalty of $4,000 instead of $20,000.

_____

D. Chris Cook, Lorain County Bar Counsel, for relator.

King Ayettey Zubaidah, pro se.

_____